STATE OF MISSOURI *ex rel.* JOSEPH WEST *et als.*, Petitioners, *v.* THE JUSTICES OF THE COUNTY COURT OF CLARK COUNTY *et als.*, Defendants.

1. *Counties—Removal of County Seats—Elections.*—The statute of 1865 (G. S. 1865, ch. 36) repealed the provisions of the statute of 1855 (R. C. 1855, p. 515) in relation to the removal of the seats of justice in the counties. The action of the County Court upon the petition filed for the removal of the county seat must be had under the law in force at the time the court acts. Under the law of 1865, two-thirds of the legally registered voters must vote for the removal to authorize the County Court to remove the seat of justice.

2. *Courts—Jurisdiction—Agency.*—In the removal of the public buildings of a county, the County Court acts in an administrative capacity as agent of the county; and all persons dealing with it while thus acting are bound to know the law conferring the authority, and must see that it is followed.

3. *Prohibition—Courts—Jurisdiction—Process.*—The writ of prohibition is issued to inferior courts to prevent the wrongful assumption or excess of jurisdiction. It will not lie to restrain the performance of ministerial acts, such as collecting taxes, locating county seats, and the like. The County Courts, in locating or removing county seats, act in an administrative and not in a judicial capacity, and the Supreme Court will not issue the writ of prohibition to restrain their action however mistaken it be.

*Suggestion for writ of Prohibition.*

*Dryden,* for petitioners.

From and after the taking effect of the new Constitution on the 4th July, 1865, a county seat could not be removed except on the vote of two-thirds of the voters of the county having the qualifications prescribed by sec. 3, art. 2, of Constitution—G. S. 24. The 3d sec., art. 11, of Constitution (G. S. 42) repeals all statutes inconsistent with the provisions of said Constitution. The 12th sec. of act of 1855 concerning removals of seats of justice, which prescribes the qualifications of voters, and the 14th section of the same act, which fixes the majority by which the question shall be determined, are inconsistent with the provisions of the 30th sec. of the 4th art. of the Constitution, which provides as well a different qualification of voters as a different majority. (For act of 1855, see R. C. 1855, p. 515.)

*J. G. Blair* and *D. A. Day*, for defendants.

The writ of prohibition can only issue in cases of want of jurisdiction, encroachment of jurisdiction, or conflict of jurisdiction by inferior courts—3 Black, Com. 112, 113; 6 Bac. Abr. 581–7; 2 Inst. 607; 9 S. & M. (Miss.) 623; 3 Bulst. 49; 2 Sell. Prac. 312; 2 Ired. 183; 1 Hill, 195; 2 Hill, 367.

If the inferior court have jurisdiction in whole or in part, the writ will not issue after judgment; nor will it issue where the proceedings are simply defective or erroneous—2 Sell. Prac. 312; 2 D. & E. 473; Cowp. 424; 9 S. & M. (Miss.) 623; 2 Metc. 296; 7 Wend. 518; 5 Pike (Ark.) 23; 2 Hill, 363; 8 Bac. Abr. (Bouv.) 218; Burr. 2036; Doug. 378. Nor will it issue unless the proceedings are actually depending in the inferior court and the relators actually endangered from some act to be done in the future. It cannot and will not issue to restrain or prohibit it from doing a past act; its office is a remedy for future acts. The suggestion does not show any act the court can or is about to commit—. 2 Sell. Prac. 312; 38 Mo. 297.

It is a judicial writ addressed to a judicial officer alone, and to restrain a judicial and not an administrative or ministerial act—1 Hill, 195; 2 Hill, 367; 2 Ired. 183.

If it be contended that the court had the power to make the order of removal, then it is submitted that its power as a court then became exhausted, and it became *functus officio*; and there was by law no act that the justices, as a court, could further do in the premises, and no writ would lie—2 Hill, 14.

We submit, however, that the seat of justice became located by operation of law upon the casting up and arranging of the votes, and that the order of the court was unnecessary and is a nullity, and in nowise affected or endangered the relators, and hence is not the subject of prohibition—R. C. 1855, § 14, p. 516.

As the writ will not lie to restrain or prohibit anything but a judicial act, we hold that defendants Bartlett and Jack-

son are improperly joined in the suggestion—1 Hill, 195 ; 2 Hill, 367 ; 2 Ired. 183 ; 9 S. & M. (Miss.) 623.

The County Court unquestionably acquired jurisdiction of the subject matter when the petition was filed, and the appointment of commissioners under the statute of 1855 was regular and right ; and the location of the seat of justice under said law, and the taking of conveyances to the county for lands donated, and the examination of titles by the circuit judge, and his certifying the same to the County Court, and its order for an election, all of necessity had to conform to the law of 1855—G. S. 1865, § 7, p. 76; id. § 3, p. 883.

The only point of real difficulty then is as to whether the 3d section of the 2d article of the new Constitution repealed the law of 1855 with reference to removal of seats of justice. We hold that it did not, for the following reason : because this law of 1855 is not inconsistent with the Constitution— Const. § 3, art. 11, G. S. 1865, p. 42.

Upon this point we submit, 1st, that under the law of 1855 land-tax paying and householding inhabitants could vote, but not all such; 2d, that under the new Constitution they can also vote, but not all such.

By the letter of the law of 1855, § 14, p. 516, all land-tax paying and householding inhabitants were voters—even women, minors, and negroes, if they paid a land tax or were householders, were qualified voters according to the letter of that law ; and this could only be prevented by construing the law to mean "land tax payers and householders qualified to vote under the then existing laws of the State." We submit that the Legislature had the power to increase or diminish the number of voters by restrictions, &c., at any time. What the Legislature might have done the Convention did do, to-wit, reduce the number of imposing restrictions, but still leaving the same class of persons qualified to vote, viz., those who paid tax on land and were householders, and none others.

The only point now to notice is the 30th section, article 4, of new Constitution—G. S. 1865, p. 32. This section pro-

hibits the Legislature from moving county seats unless two-thirds of the qualified voters vote therefor at a general election. In view of the fact that there has heretofore been two modes of removal, one by that body and one by our courts, a restriction or prohibition of one would not be a restriction or prohibition of the other. Had the Convention entirely prohibited the Legislature from removing, would that have prohibited the courts? This certainly could not be pretended.

The granting of the writ is discretionary with the court— 2 Sell. Prac.; 23 Ala. 94. Where a doubt exists, no writ will issue.

Holmes, Judge, delivered the opinion of the court.

This is a suggestion accompanied with an exemplification of the record of the County Court of Clark county, filed in this court by the relators, supported by affidavit, and praying for a writ of prohibition against the justices of the County Court of said county, and against the commissioner appointed by the court to select a site for the seat of justice of said county, and the contractor with the court for the erection of county buildings at the place selected, to restrain them from further proceedings in the matter of a removal of the seat of justice of said county, on the ground that the court was exceeding its jurisdiction.

The case is submitted upon demurrer to the petition, from which (together with the exemplification of the records) it appears that a petition signed by some of the citizens of the county had been presented to the County Court in June, 1866, upon which the court, on the 2d day of October, 1866, made an order submitting the question of a removal of the seat of justice to the voters of the county at a general election to be held on the 6th of November following; that a vote was taken accordingly, and, there being a majority of the voters in favor of the removal, the court proceeded to make orders appointing a commissioner, appropriating money, and contracting for the erection of county buildings at

the place selected; and that the relators, as citizens of the county and owners of real estate in the town of Cahoka, then the seat of justice, appeared and moved the court to set aside and vacate these orders, and that their motions were overruled.

All these proceedings on the part of the court took place after the general statutes of 1865 went into operation, though the petition had been presented before. The defendants contend that the proceedings were to be governed by the previous statute of 1855. This position cannot be sustained. The statute of 1865 on this subject was in force when the first action of the County Court was had upon the petition. This was a new statute covering the whole of the same subject matter of the previous act, which was thereby suspended and repealed. The former special act providing for a change of the seat of justice from Waterloo to Cahoka had been exhausted by the completion of the removal made under it. The proposition for still another removal fell under the general statutes.

The act of 1865 (G. S. 1865, ch. 36) gave the County Court power to proceed upon a petition of one-fourth of the voters of the county to order the question of a removal of the seat of justice to be submitted to the qualified voters of the county at the next general election, in the manner therein specified, and to appoint five commissioners to select a site for a new seat of justice, if it should appear that " two-thirds of the legally registered voters of the county" were in favor of such removal. The commissioners were to report their proceedings to the Circuit Court, accompanied with the evidences of the title to the land selected for such site, and the judge of that court was to certify his approval of the title to the County Court; and thereupon, if the court should believe that the most suitable place had been selected, it was then to become " the permanent seat of justice of the county."

It is clear that the County Court did not proceed in accordance with the provisions of this act. A majority only,

and not "two-thirds of the legally registered voters," as expressly required, had voted for the removal. The proceedings were in other respects in direct contravention of the only law which gave them power over the subject. They were acting in an administrative capacity, and as the agents of the county, and were bound to pursue the authority given by the statute, and to act within the scope given by their special and limited power; and all persons dealing with the court, thus acting in behalf of the county, were bound to know the law that conferred the authority—Wolcutt v. Lawrence Co., 26 Mo. 272; Sheeley v. Wiggs et al., 32 Mo. 398.

A more difficult question arises whether a prohibition is the proper remedy in such case. The duties of the County Courts are partly judicial, and in part merely administrative—State v. Cooper Co. Ct., 17 Mo. 507. In the exercise of that portion of their jurisdiction which is judicial in its nature, as in matters of probate, accounts, guardians, minors, lunatics, apprentices, and the like, in which an appeal is allowed to the Circuit Courts, the County Courts are a branch of the judiciary of the State, and as much State courts as the Circuit Courts—Miller v. Iron Co., 29 Mo. 122. And if the court were exceeding its proper jurisdiction in matters of this kind, or were proceeding judicially upon a misconstruction of a statute involving a question of jurisdiction in any suit pending between parties (though the county might be one of the parties), there is no doubt that a prohibition might be granted, at the discretion of the court, at the instance of any one of the parties, or even of a stranger to the suit—Thomas v. Mead, 36 Mo. 232; Howard v. Pierce, 38 Mo. 296; Gould v. Gapper, 5 East, 345; Tylstra v. Charlestown, 1 Bay, 382; Washburn v. Phillips, 2 Metc. 296; Ex parte Smith, 23 Ala. 94; People v. Supervisors, 1 Hill, 201; Reese v. Lawless, 4 Bibb, 394; 2 Litt. Prac. 312.

But the office of a prohibition is to prevent courts from going beyond their jurisdiction in the exercise of judicial power, and not of ministerial or merely administrative function; and in a case where the court errs on a question of

jurisdiction, or in the construction of a statute, in the exercise of such judicial power as an inferior court. It will not lie to restrain a ministerial act, as the issuing of an execution, or the levying of a tax to repair county buildings (Ex parte Branolacht, 2 Hill, 367; Clayton v. Heidelberg, 9 Sm. & M. 623); nor against ministerial officers, such as tax collectors, commissioners to locate a county seat, or the like; nor to restrain the issuing of a commission by the Governor. —State v. Allen, 2 Ired. 183; People v. Supervisors, 1 Hill, 195; Ex parte Blackburn, 5 Ark. 21; Gill v. Taylor, 4 Mc-Cord, 206. In these cases there is no question of a conflict of jurisdiction between different courts in the administration of justice, and there are supposed to be other adequate remedies for any injury that may be done. In the case of the King v. Justices of Dorset, 15 East, 594, the court refused a prohibition to restrain the justices from pulling down an old bridge for the purpose of building a new one, as creating a nuisance, and said that such an application of the writ had not been recognized in modern practice, where there was another remedy by indictment, though some ancient authorities were cited in support of it; and we have found no authority in this country that can be relied on for the application of the writ to a case of this kind. Even where a prohibition might be a proper remedy, the granting of it is subject to the discretion of the court.

In Tetherow v. Grundy Co. Ct., 9 Mo. 117, it was decided that a writ of error would not lie from an order of the County Court appointing commissioners to locate a permanent seat of justice, and it was distinctly intimated as the opinion of the court that such a proceeding was not *a civil suit depending* between parties; that such an order was not a final judgment on which a writ of error would lie; and that the plaintiff was not to be considered a party to the proceeding as a suit; but it was said that "the Circuit Courts have a superintending control over the County Courts, and, if they exceed their powers or act contrary to their duty in proceedings in which writs of error will not lie, there are

modes by which they can be restrained in conformity to the usages and principles of law." The court did not attempt to point out what those remedies were, nor is it necessary that we should undertake to indicate them now. We may observe only that one mode of exercising that control is by the writ of mandamus in cases where that writ will lie; and if the court should exceed its powers in the exercise of that part of its jurisdiction which is judicial in its nature, a prohibition would unquestionably be a proper remedy.

In respect of the commissioner and contractor. it is apparent from the authorities that this writ must be refused. It is equally clear that the functions of the justices of the County Court in this matter pertain to their administrative capacity, and not to the exercise of judicial power. The statute confers upon them a limited and special authority in proceedings of this nature. They derive their whole power from the statute. It is conferred upon them as representing the people of the county, whose agents they are in this business. The power given is made to depend upon the consent of at least two-thirds of the legally registered voters of the county, and this consent is to be manifested in the mode prescribed by the act, and in no other way. It is not imperative upon the court to adopt the place selected by the commissioners, though the title deeds be approved by the judge of the Circuit Court, unless they believe the most suitable place has been selected; this decision upon this matter, in the exercise of the discretion thus conferred, is to be evidenced by an order entered of record; and then the place so selected becomes the permanent seat of justice of the county. This is a direction as to the exercise of a power given by the statute, and the power must be exercised within the limits of the authority conferred and under the conditions imposed by the act. It is plain that the power given has not been pursued; the conditions have not been complied with; the consent of the voters has not been obtained in the manner prescribed; and it must follow that the pro-

ceedings were without the authority of law, and are therefore null and void.

A prohibition not being the proper remedy, the demurrer will be sustained and the writ denied. The other judges concur.