THE STATE *ex rel.* ELLIS *et al.* v. ELKIN *et al.*

### Division One, July 9, 1895.

1. **County Court:** COUNTY SEAT REMOVAL: ELECTION: JUDICIAL POWER. The county court is a constitutional court of record in Missouri, and has authority to deal with the subject of removal of a county seat, as part of its administrative functions; but it can not, in a proceeding for such removal, lawfully assume power to declare a different result of an election from that shown by the returns of the election officers. To make such change of result requires the exercise of judicial power which that court does not possess in such a case.

2. ———: ———: ———: CANVASSING BOARD. A canvassing board, in certifying the result of an election, has no power to discard the vote of any precinct, duly certified and returned by the election officers.

3. ———: ———. The final act in removing a county seat is done by the county court after the selection of a site for public buildings by the commissioners.

4. ———: ———: ELECTION CONTEST. There are no provisions of law in Missouri for a contest of an election to remove a county seat.

5. **Courts:** JURISDICTION. Jurisdiction of the subject-matter is the power to hear and determine the general class of proceedings to which that in question belongs.

6. **Supreme Court:** SUPERINTENDING POWER: PROHIBITION. In the exercise of its superintending control, it is the duty of the supreme court to grant a writ of prohibition when necessary to keep a county court within its jurisdiction.

State ex rel. v. Elkin.

7. **Prohibition, When Issued.** The writ of prohibition may go whenever judicial functions are assumed, not rightfully belonging to the person or court assuming them. It is the nature of the act which determines the propriety of the writ.

8. ——. Prohibition is available to keep a court within the limits of its power in a particular matter, as well as to prevent the exercise of jurisdiction in a cause not given by law to its consideration.

9. ——. The court will not award a prohibition where a party can readily reach a desired result by other methods of procedure; but it is not bound to refuse because there may be some cumulative remedy; and where a state of facts calling for the writ is shown, and no other remedy is available, its issuance is not discretionary, but a matter of right.

10. ——. A writ of prohibition may go at any time before the act complained of is fully consummated or executed. *State ex rel. v. Rombauer*, 105 Mo. 103, *followed*.

11. ——: MOTION FOR JUDGMENT. A motion for judgment upon a return in prohibition admits all facts well pleaded in the return.

12. ——: PARTIES. New parties plaintiff may be substituted during the pendency of a prohibition proceeding.

13. **County Seat:** REQUISITE VOTE FOR REMOVAL: CONSTITUTION. Under the present constitution and laws of Missouri a two thirds' majority is necessary for the change of a county seat.

14. **Prohibition:** OFFICERS: CONTEMPT. Where sworn county officers are defendants in a prohibitory writ, the court refrains from proceeding to deal with them as for a contempt where there is no ground to suppose there was any intention to disregard the law.

15. ——: PEREMPTORY WRIT: RETURN. The only proper return to a peremptory writ of prohibition is a return of compliance with it.

16. **County Seat, Removal of:** PROHIBITION: CONTEMPT. Where a county court has declared a proposal carried to remove a county seat, and, after being prohibited from carrying out such declaration, holds a session of court at the proposed new county seat, such action is a contempt of the prohibitory writ, and the justices of the county court will be attached for the contempt.

## *Prohibition.*

PEREMPTORY WRIT AWARDED.

The petitioners applied for a prohibition against the county judges of Montgomery county to stop pro-

ceedings in execution of an order of the county court for the removal of the county seat from Danville to Montgomery City.

The documentary evidence mentioned in the opinion of the court is as follows:

### "EXHIBIT B" OF THE RETURN.

"Certified copy of the proceedings of W. A. Crockett, county clerk, S. A. Elkin and J. R. Shocklee, two judges of the county court of Montgomery county, Missouri, acting as a board of canvassers, to canvass the returns of an election held in said county, on November 6, 1894, and recorded in book F, at page 598, as follows:

"In the matter of the removal of the seat of justice from the town of Danville to the City of Montgomery, heretofore submitted to the voters of Montgomery county, Missouri, at the general election held in said county, on the 6th day of November, 1894, exclusive of the Wellsville precinct, there was cast in said county a total of 2,943 votes on said proposition; that there was out of that number 2,029, votes for the removal of such seat of justice, from the town of Danville, to the City of Montgomery, and there was 914 votes against said proposition.

"That the returns on said proposition from Wellsville precinct were delivered on the 8th day of November, 1894, to W. A. Crockett, clerk of the county court, by John Sharp, in the following condition: That the ballots, poll book and tally sheet were delivered at office of county clerk, in Danville; that when same was delivered the ballots were sealed; the poll book and tally sheet were delivered unsealed, and that the only thing said poll book contained were the oaths

of the judges and clerks of such election precinct, and certificate of Walter McQuie, justice of the peace, who had administered the oath of office to such judges and clerks, the names of the voters of that precinct; that there was no certificate made by said judges and clerks of such precinct, showing the number of votes cast for or against said proposition at said election precinct; that the clerk and other canvassers took the vote on said proposition voted upon at such precinct from the tally sheet returned with the poll book, that after said poll book, tally sheet and ballots had been delivered to the clerk, said John Sharp and R. L. Lowery informed the clerk that the poll book was not signed and certified to. Through the advice of the board of canvassers, John Sharp returned to Wellsville with the poll book and tally sheet of said precinct. Such poll book was returned to the office of the county clerk the same day with the certificate filled out, with the names of the judges and clerks attached thereto.

"The vote of such precinct was as follows:

"For the removal of the seat of justice from the town of Danville to the City of Montgomery, 197 votes; against the removal of the seat of justice from the town of Danville to the City of Montgomery, 299 votes. The total vote of the county on said proposition, including the vote from Wellsville, was 3,439; 2,226 of such votes were for the removal of the seat of justice and 1,213 votes against such removal.

"STATE OF MISSOURI,  
                        } ss.  
"County of Montgomery. 

"I, W. A. Crockett, clerk of the county court, in and for said county, hereby certify the above and foregoing, to be a true copy of the proceedings of our said board of canvassers, as had on the eighth day of

November, A. D. 1894, as the same appears of record in my office, and recorded in Book 'F', page 593.

    "In witness whereof, I have hereunto set my hand and affixed the seal of said court, at my [SEAL] office in the City of Montgomery, this 21st day of February, A. D. 1895.

           "W. A. CROCKETT,
              "Clerk County Court."

"EXHIBIT C" OF THE RETURN.

"STATE OF MISSOURI,     } ss.     "November Adjourned Term, 1894.
"County of Montgomery. }

    "In the county court of said county on the 26th day of December, 1894, the following among other proceedings were had, viz.:

    "The matter of the vote upon the proposition to remove the county seat of this Montgomery county, Missouri, from Danville to the City of Montgomery, not having been completely canvassed by this court, and the result announced at its last meeting, the same is now here considered by the court, and the court doth find that no return of the result of the election upon the proposition at Wellsville precinct, was made by the judges and clerks of election, in the manner required by law, the returns from the precinct, at the time such returns were filed, containing no certificate of any kind, showing any vote upon the proposition of the number of votes thereon, either for or against such proposition. The court doth therefore declare the result of the election upon the proposition to remove the county seat of Montgomery county from Danville to the City of Montgomery, refusing to count any alleged vote alleged or supposed to have been cast at

Wellsville precinct. And it appearing to the court, that there were cast at the election by the legally certified returns, 2,943 votes upon the proposition to remove the county seat of Montgomery county from Danville to the City of Montgomery, and that, of such number 2,029 votes were cast in favor of the proposition, and 914 votes were cast against the proposition, and, it appearing to the court, that there were cast in favor of the proposition the votes of two thirds of the legal voters of Montgomery county, voting upon the proposition; it is ordered and adjudged by the court, that the proposition to remove the county seat, or seat of justice of Montgomery county, from Danville to the City of Montgomery, is declared carried under the election ordered by this court; the court being satisfied from the return of R. E. See, sheriff of Montgomery County, and from. the affidavits of the publishers of the *New Florence Leader*, *Montgomery Standard*, *Middletown Chips*, *Jonesburg Journal*, *Wellsville Wide-Awake*, *Wellsville Optic News* and the Montgomery County *Republican*, newspapers published in the English language, in Montgomery county, Missouri, that public notice of the proposed removal of the county seat for the general election of 1894, was given as ordered by this court at its August term, 1894, by publication, in seven newspapers published in the English language and published in Montgomery county, and by the posting and putting up by the sheriff of Montgomery county, in handbill form printed copies of the order of this court made at its August term, 1894, submitting the proposition to the qualified voters of said county, in not less than three of the most public places in each township in Montgomery county, both not less than thirty days before the election at which such proposition was voted upon,

to wit, on the second and third days of October, 1894, and all such notices were published and continued as nearly as possible up to the day of the election, November 6, 1894. The court doth therefore order and adjudge that in pursuance of the statute, five commissioners be and they are hereby appointed to select a site whereon to locate the seat of justice, to wit: J. T. Jones, David Fleet, Jacob B. Shelton, Samuel Mudd, and Charles Kolling.

"The court further orders, that the commissioners above named assemble in the office of the circuit clerk, at the courthouse in the City of Montgomery, on the ninth day of February, 1895, at 2 o'clock P. M. and report their proceedings as such commissioners to the circuit court of Montgomery county, as the law requires; the court further orders the clerk of this court to issue a certificate of appointment to each of the above named commissioners, under the seal of this court, showing therein their appointment, as such commissioners, and the time and place when and where the commissioners shall assemble, and cause the same to be served by the sheriff on each commissioner, and the sheriff is further ordered, to put up advertisements in ten of the most public places in the county, one month before the date of the meeting of the commissioners notifying the inhabitants of the county of the time and place and the purport of the meeting.

"STATE OF MISSOURI,    }
                    } ss.
"County of Montgomery. }

"I, W. A. Crockett, clerk of the county court, in and for said county, hereby certify the above and foregoing to be a true copy of the proceedings of our

said county court, on the day and year above written,. as the same appears of record in my office.

"In testimony whereof, I have hereunto set my hand and affixed the seal of said court at [SEAL]    office in the City of Montgomery, this 21st. day of February, 1895.

"W. A. CROCKETT,

"Clerk County Court."

(Then follows the return of the sheriff in regard to due publication of the above order, showing such publication as required.)

The other necessary facts are stated in the opinion of the division.

*Warner Lewis* and *Silver & Brown* for relators.

(1) Prohibition is proper to prevent judicial action by *quasi* judicial or by even purely ministerial officers who assume to exercise judicial functions. Works on Jurisdiction, p. 628; *Braize v. County*, 25. W. Va. 213. (2) Prohibition will lie where the court goes beyond its legitimate powers. *State, etc., v. Lewis*, 76 Mo. 370; *State, etc., v. Walls*, 113 Mo. 42; 19 Am. and Eng. Encyclopedia of Law, pp. 268, 269. (3) Exhibit B (with the return) shows the action of the county board of canvassers under Revised Statutes, 1889, section 4684, and also that, with the Wellsville precinct counted, the removal proposition did not carry by the necessary two thirds vote. *First.* The action of the board was regular and proper in accepting the amended return from the Wellsville precinct, as shown on the face of exhibit B; in fact, the board could have been compelled by *mandamus* to permit the judges and clerks to have amended such return. *People, etc., v. Nordheim*, 99 Ill. 553; *People, etc., v. Noyes*, 126 N. Y. 392; *State, etc., v. Steers*, 44 Mo..

VOL. 130 mo—7

223. *Second.* Besides, the statute (R. S. 1889, sec. 4683) expressly authorizes the county clerk to send a messenger for the poll books, if not duly sent to such clerk, and a similar statute in Michigan was applied to a case of defective returns. *Rich v. Board,* 59 N. W. Rep. 18. *Third.* While section 4684, Revised Statutes, 1889, does not expressly provide that the board of canvassers shall cast up the result on a proposition other than the election of a candidate for office, still, by analogy and implication, that duty would seem to devolve on the canvassing board, and it has been so substantially decided in this state. *State v. Searcy,* 39 Mo. App. 393. *Fourth.* Cases within the reason, though not within the letter of the law, are sometimes construed to be embraced in its provisions. 2 Blackwell on Tax Titles, sec. 1220. *Fifth.* A thing within the intention of the legislature in framing a statute is sometimes as much within the statute as if it were within the letter. *Ex Parte Bomino,* 83 Mo. 433. *Sixth.* The respondents' own return recognizes the validity of the action of the board of canvassers, and in part rests their defense on its action as a board of canvassers, and its validity must, therefore, be presumed in this proceeding. A party will not be heard to controvert his own pleading; is bound by the statements therein. *Knoop v. Kelsey,* 102 Mo. 291; *Lenox v. Harrison,* 88 Mo. 491; *Ramsey v. Henderson,* 91 Mo. 560. (4) *First.* The powers of the board of canvassers were purely ministerial. *State, etc., v. Steers,* 44 Mo. 224; *State, etc., v. Garesche,* 65 Mo. 480; McCrary on Elections, sec. 350. *Second.* While the return states that the board of canvassers had adjourned before receiving the Wellsville precinct return, yet the record entry does not so show; in fact, shows the contrary, and we apprehend this court will be governed by the exhibit rather than by the statement of the pleader in the

return; *first*, because pleadings (of which the exhibit is a part in this case) are always construed most strongly against the pleader. *Friscony v. Ow*, 49 Cal. 612), and, *second*, because documentary evidence (especially a matter of record) should prevail over the unsupported statement of the pleader. *Third*. Again, when a canvassing board disperses before completing its returns, its members can be compelled by *mandamus* to reassemble and complete it. *People v. Nordheim*, 99 Ill. 563. And in the latter case the offer to amend was treated by the supreme court as equivalent to the amendment; but in the case at bar the amendment was actually made. (5) *First*. The board of canvassers having examined and cast up the result, and having rightly included the Wellsville precinct (at least, announced the result of the vote of that precinct as shown by the amended returns), the county court was powerless to review or change that result, as it sought to do by its order of December 26, 1894. *Second*. Such action on its part was really the determination of an election contest on the removal proposition, and was the exercise of judicial power not possessed by the county court. *Braize v. Commissioners*, 25 W. Va. 213; *State, etc., v. Steers*, 44 Mo. 224. *Third*. The action of the county court being judicial and in excess of its powers, prohibition will lie. (6) *First*. If the court should be of the view that it was the duty of the county court (and not of the canvassing board) to cast up the returns under Revised Statutes, 1889, section 3139, still the result must be the same in this proceeding, because the province of the county court was only ministerial, viz., to examine and cast up the returns. It is true the returns must have been properly signed and in regular form, but it is also further true that the court was not only authorized to permit the returns to be amended, but could have been so compelled by

*mandamus. People, etc., v. Nordheim*, 99 Ill. 553; *People, etc., v. Noyes*, 126 N. Y. 392; *State, etc., v. Steers*, 44 Mo. 223; *Braize v. Commissioners*, 25 W. Va. 213. See, also, *Co. v. Schmaulhausen*, 123 Ill. 321 (syllabus, point 4). *Second*. And on the returns as so amended, the county court could only declare one result, viz., that the removal proposition had failed to carry by the necessary two thirds vote; that was its specific ministerial duty. Other action on its part (such as is contained in the order of December 26, and rejecting the Wellsville precinct), was judicial and beyond its power; and prohibition lies to prevent such action. Authorities *supra*. *Third*. So prohibition is the proper remedy so long as there are any proceedings under the order (sought to be prohibited) to be carried out. *State, etc., v. Rombauer*, 105 Mo. 103. *Fourth*. The return itself and exhibits show that, even though the alternative writ of prohibition was not served at the time of the entry of the order of removal, still the executive acts of removing the county property to Montgomery City, etc., had not been consummated, and hence this case falls directly within the one last cited *supra*. And if the motion for a judgment, notwithstanding the return, is sustained, relators ask an annulling order similar to the one made in 105 Mo. 103, *supra*. (7) The alleged injunction proceeding in the circuit court and this proceeding are not between the same parties, and for that reason, if for no other the circuit court suit, presents no obstacle to this one. (8) The point presented in this case is not like the one decided in 41 Mo. 44. It was not ruled there that if the county canvassers had cast up and announced the result, the county court could judicially revise and change it.

*Fagg & Ball* and *Ball & Ball* for respondents.

(1) A writ of prohibition does not lie in a case like this. *State ex rel. v. Clark Co. Ct.*, 41 Mo. 44, and cases there cited; *Trainer v. Porter*, 45 Mo. 336; 2 Spelling on Extraordinary Relief, sec. 1722; High on Extraordinary Legal Remedies, sec. 780; *Vitt v. Owens*, 42 Mo. 512; *State ex rel. v. Wickham*, 7 Mo. App. 562; *State ex rel. v. Burckhartt*, 87 Mo. 533; *State ex rel. v. Withrow*, 108 Mo. 1; *Wilson v. Burkstresser*, 45 Mo. 283; 2 McQuillin's Pleading and Practice, sec. 1873; *U. S. v. Hoffman*, 4 Wallace, 158; *State v. Klein*, 116 Mo. 259. (2) The writ of prohibition in any case does not issue as a matter of right. It is always within the discretion of the court, and should not be issued unless it is perfectly apparent that the inferior tribunal is about to do an act as a judicial body which would be an usurpation of power and beyond its jurisdiction. See all of the above authorities. (3) If the relators have any ground of complaint whatever against the justices of the county court as the mere agents of the people in this matter, there is no sufficient reason appearing upon the face of the record to show that they may not resort to other remedies to redress them. They are in fact seeking relief by injunction upon the same state of facts.

*C. E. Peers* and *Morton Jourdan*, also, for respondents.

(1) The acts of which relators complain are ministerial and not judicial, and prohibition will not lie to permit their performance. *State, etc., v. Clark Co. Ct.*, 41 Mo. 44; *Hockaday v. Newsome*, 48 Mo. 196. (2) If the county court of Montgomery county had jurisdiction to do the things complained of in relators' petition,

then prohibition will not lie to restrain it. *State ex rel. v. Burckhartt*, 87 Mo. 533. (3) There can be no question, not only of its jurisdiction but its right to do the very things of which relators complain. Sections 3136–3152, R. S. 1889. (4) And where the power to act upon and determine the removal of the county seat is conferred by law upon a particular tribunal as a county court, a court of equity will not review the action of such tribunal upon the question of removal, and will not enjoin the commissioners which it has appointed for that purpose from making the removal. 2 High on Injunctions [3 Ed.], sec. 1257, p. 93. (5) It is respectfully contended that relators have not sufficient interest in the proceeding as shown by the petition, to maintain a bill to enjoin respondents. High on Injunctions, *supra*, sec. 1258, p. 984. (6) It is evident that relators must have some especial or private interest in the subject-matter, where they do not sustain the relation of public officers prosecuting for the benefit of the public. (7) The circuit court of Montgomery county had the power to issue the writ asked by relators, and the application should have been made to that court. *State ex rel. v. Walbridge*, 116 Mo. 656.

BARCLAY, J.—This is an original proceeding for a writ of prohibition.

The petitioners who ask the writ are citizens and taxpayers of Montgomery county.

The defendants are the judges of the county court of that county.

The subject of the controversy is the removal of the county seat.

The application for the writ was first made to this division of the court, February 5, 1895, by certain petitioners, who afterward retired from the case; but,

before they were well out, the persons now prosecuting the action came in, and were made parties demanding the desired writ.

The defendants have made return, showing their cause why the prohibition should not go.

Upon this return the petitioners have moved for judgment.

This motion for judgment upon the return must be taken to admit all facts well pleaded in the return; and upon that motion the cause has been submitted.

The return of defendants is accompanied with several exhibits of copies of records, bearing on the point on which our judgment is asked.

The principal facts that control the result are not disputed.   Their legal effect alone is in controversy.

During last summer, the county court of Montgomery (upon due application, the sufficiency of which is not questioned) ordered that a proposition to remove the seat of justice of that county from Danville to the City of Montgomery be submitted to the qualified voters of the county at the general election, November 6, 1894.

The proposition was accordingly submitted.

When the returns of the election had been received, the county clerk and two justices of the county court, made a canvass of them, November 8, 1894, and the record then made of the result (so far as relates to the removal of the county seat) is given by "*Exhibit B*" of the return, as shown in the statement preceding this opinion.

Afterward, December 26, 1894, the county court took action upon the subject, in the manner described by the record which forms "*Exhibit C*" of the defendants' return (also given in the statement).

The commissioners to locate the seat of justice in Montgomery City under the order of December 26,

1894, were to meet February 9, 1895; but the rule in prohibition in this action was served upon the defendants, as judges of the county court, February 6, 1895.

The general position of the petitioners is that the order for the removal of the county seat was without authority and void.

To this contention defendants make several answers, each of which will be considered.

1.  It is first insisted that prohibition is not properly allowable to stop action by a county court in regard to the removal of a county seat.

It is very true that the subject-matter of changing the location of a county seat belongs to the administrative department of the county court. That has been often asserted in decisions of the supreme court, the latest of which is *St. Louis, etc., Co. v. City* (1887), 92 Mo. 165 (4 S. W. Rep. 665).

In one case it was held that prohibition would not lie to prevent action by the county court in ordering the removal of a county seat, where the court was proceeding under the law of 1855, which required only a majority vote for such removal, while the case (as the supreme court held) was really governed by the law of 1865, which required two thirds' majority to carry the proposition. *State ex rel. West v. Clark Co.* (1867), 41 Mo. 44. In that judgment, however, the court pointed out the distinction between the exercise of judicial, and merely administrative powers, with reference to the use of the writ of prohibition.

Under the existing constitution and laws, there is no question of the size of the majority required to authorize the county court to act. "No county seat shall be removed unless two thirds of the qualified voters of the county, voting on the proposition at a general election, vote therefor," says the organic law (Art. 9, sec. 2).

The statute law conforms to that command. (R. S. 1889, sec. 3138).

It is the duty of the county court, under section 3145 (R. S. 1889), to perform the final act in the removal, by certifying its belief that the commissioners have selected the most suitable place for the public buildings necessary to the seat of justice. In so doing, the county court, no doubt, acts in its administrative capacity. Indeed, the whole proceedings for the change of a county seat belong to the same general department of governmental activity which that court exercises in the control of the county property and the county finances. But the action of the court, even on such subjects, is not beyond the control of law.

The writ of prohibition is applicable whenever judicial functions are assumed which do not rightfully belong to the person or court assuming to exercise those functions.

It is the nature of the act which determines the propriety of the writ.

The county court, no less than other courts, can be prohibited from proceeding to give effect to acts of a judicial character which it has no lawful jurisdiction to perform.

The writ is as available to keep a court within the limits of its power in a particular proceeding as it is to prevent the exercise of jurisdiction over a cause not given by the law to its consideration.

Let us, then, examine the nature of the power exerted by the county court in its action, December 26, 1894.

The county clerk, in conjunction with two judges of the court, November 8, 1894, had made a canvass of the returns on the proposition for the removal of the county seat. They then had ascertained and certified that that proposition received twenty-two hundred and

twenty-six votes, and that twelve hundred and thirteen votes had been cast against the removal.

That certificate also stated that the returns from Wellsville were in an imperfect condition when first received, but that they were again returned on that day to the county clerk "with the certificate filled out, with the names of the judges and clerks attached thereto." After that recital the vote of the county was certified, as appears from the figures above quoted.

That canvass of the county returns was spread upon the official records of the county. It showed on its face that the proposition to remove the county seat had fallen short of the required two-thirds majority, and had therefore failed of adoption.

The result of the election having been thus certified, the county court had no power to change that result. It was bound to give effect to the vote returned by the election officers and duly authenticated.

To use a homely but very significant expression, it could not "go behind the returns."

The action which the court recorded, December 26, 1894, undertook to recanvass, or (as the record implies) to complete the canvass of the result of that election. The court did so "by refusing to count any alleged vote, alleged or supposed to have been cast at Wellsville precinct," as its record declares. Having thus thrown out the vote of one precinct, the remaining vote gave the needed majority to the proposition for removal, which the court then pronounced adopted.

Even if the proceedings of December 26, 1894, be regarded as the first canvass of the county vote, it appears that at that time the Wellsville vote had been duly certified. That vote could then no more be discarded by the county court, if acting as a canvassing board, than by any other mere canvassing authority, under the settled law of this state. *Mayo v. Freeland*

(1847), 10 Mo. 630; *State ex rel. v. Steers* (1869), 44 Mo. 223; *Bowen v. Hixon* (1870), 45 Mo. 340; *State ex rel. v. Trigg* (1880), 72 Mo. 365.

At this point we touch the very gist of the case.

To change the result announced and certified by election officers requires the exercise of judicial power. To get rid of the vote of Wellsville precinct in the matter in hand, it was necessary for the county court to use a power such as is ordinarily exerted in the contest of an election.

The act of the court was not a mere announcement of the result, as certified by the officers to whom the law confided the duty to certify. It was judicial action upon the result so certified. It was judicial action which substituted a different result from that exhibited by the certified returns.

We regret the occasion that requires us to say that the use of such power by the county court, in the circumstances, was not authorized by law. The attempted action was judicial in its nature, and, as such, beyond the jurisdiction of the court in the matter it then had in hand.

It is precisely such a case as the writ of prohibition is designed to reach—a case of assumption of authority to pass judgment upon a subject not committed by law to the decision of the tribunal so assuming to act.

Although the court had jurisdiction of the subject-matter, namely, the power to hear and determine the general class of proceedings to which that in question belonged, it did not have jurisdiction to use, in such a proceeding, a judicial power not applicable therein under the existing law.

The county court is a constitutional court of record, but its jurisdiction is defined to be, "to transact all county and such other business as may be prescribed by law." Const. 1875, art. 6, sec. 36.

The law governing its action in regard to the removal of county seats (R. S. 1889, secs. 3136 and following) neither expressly, nor by implication, confers any authority to act judicially upon the returns of the election, as was done in this instance.

The county court did not have the power to set aside the returns from any precinct; and, in assuming that power, it passed beyond the limits of the authority confided to it.

In many states of the union provision is made for contests of elections for the removal of county seats. But in Missouri there are no express provisions of law for such contests.    That fact, however, can not justly be held to enlarge the jurisdiction of the county court in reference to that subject.    That court, we repeat, can not act judicially upon the returns, for the purpose of revising the result they exhibit.

. We conclude that the writ of prohibition will lie to stop further action by the court under the judgment of December 26, 1894.

We consider that this conclusion does not conflict with the rulings which declare that the removal of a county seat belongs to the administrative or business department of county affairs.    We regard the question here raised as involving principles not discussed in those cases, but which are of vital importance in dealing with the subject of elections.    The case is not one of mere error of judgment in a matter which the court was authorized to act upon.    Here is a plain assumption of power not appertaining to the court in the proceeding in which the power is sought to be applied.

In the exercise of the superintending control given to the supreme court by the constitution (Const. 1875, art. 6, sec. 3), it is the plain duty of this court, when properly invoked, to grant a writ of prohibition if necessary to keep a county court from passing beyond

the bounds of its proper authority into a field of judicial action not assigned to it, but plainly forbidden to it by the law.

2.   But it is claimed that other remedies are available to check the defendants from proceeding in the matter of removing the county seat.   That may be.

The court will decline to award a prohibition where a party can readily obtain a desired result by other methods of procedure, as was held in *Mastin v. Sloan* (1889), 98 Mo. 252 (11 S, W. Rep. 558).

But those methods must be reasonably adequate, prompt and efficient.

The granting of a prohibitory writ is discretionary in the sense that the court will not issue it, unless the facts exhibited appear to justify a resort to such a remedy.   Where other convenient and effective modes of reaching the same result are open to the complaining party, the court may decline to award the extraordinary remedy.   But it is not bound to decline because there may be some concurrent remedy.   Whether other modes of relief are equally effective is a question to be determined in each particular exigency.

And where a state of facts is presented, calling for the use of the writ according to the principles and usages of law, and where no other remedy is available, its allowance is not discretionary, but a matter of right under our constitution.   (Art. 2, sec. 10.)

In the present instance we have no hesitation in ruling that the resort to this writ is appropriate and lawful.

3.   But it is then said that the matter has gone too far to be reached by a writ of prohibition.

The action of the county court in December was, in effect, a judgment upon the election; a judgment beyond the jurisdiction of the court that entered it of record.

So long, at least, as any part of it remains unexecuted, further proceedings upon it can properly be prohibited.

This point has been recently so fully discussed that a repetition of the argument upon it is deemed unnecessary. *State ex rel. v. Rombauer* (1891), 105 Mo. 103 (16 S. W. Rep. 695).

A judgment rendered without jurisdiction certainly can not be infused with life by a mere attempt to promptly execute it.

The defendants were invoked to vacate the judgment, as being unauthorized, some time before the date set for the commissioners to act in the matter of the removal. The prohibitory rule in this case was served before that date; and final action by the county court would still be needed (under section 3145) to complete the removal, even had the requisite vote been given.

As the case stands, the judgment of removal can not lawfully be carried out.

4. A suggestion has been made, looking toward action by this court in reference to steps taken by defendants since the preliminary rule in this case. We do not deem it needful at this time to go into that question.

We are dealing with sworn county officers, whom we have no ground to suppose have the slightest intention to disregard the law. The proceedings, which we have found it our duty to disapprove, were, no doubt, taken by the county court under a mistaken apprehension of the extent of its authority in the premises. We have no reason to believe that defendants will not promptly conform their official action to the ruling we have made. So we reserve any action on the suggestion referred to.

It follows from what has been said that the motion for judgment is sustained, and the rule in prohibition

is made absolute.  BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.

### OPINION ON MOTIONS AFTER JUDGMENT.

PER CURIAM (BRACE, C. J., and BARCLAY, MACFARLANE and ROBINSON, JJ.)—Two points are presented by motions following the peremptory writ.  In order that there may be no possibility of any misunderstanding of .the effect of our rulings thereon, we file this memorandum.

1.  The motion to quash the return to the peremptory writ is sustained for these reasons.

The only return that can properly be made to a peremptory writ of prohibition is a return of compliance with it.  Here, the writ commanded defendants to conform their official action, as judges of the county court, to the judgment rendered.  That judgment declared that the county seat of Montgomery county had not lawfully been removed from Danville, and that it could not so be removed under the official returns of the last election on that subject.

It now appears that the defendants, having meanwhile removed the county records from Danville to Montgomery City (as though the county seat had been lawfully transferred to the latter city), have held a session of the county court at Montgomery City, since the final judgment of this court and since the service of the peremptory writ upon them.  In their return to that writ defendants significantly omit to state that they have conformed their official action to the judgment of this court, as the writ commands them to do.

Hence their return to the peremptory writ is insufficient.  It is accordingly quashed.  Defendants are required to make a further return to said writ within ten days from this date.

2.    On the motion for an attachment for contempt it is ordered that such attachment issue, returnable to the first day of the next term of this court; but if in the meantime the defendants shall obey in all respects, in its letter and obvious intent, the peremptory writ, and make full return thereof (as required by the order for a further return above made), the court will duly consider that fact at the opening of the next term, in determining what further orders be made in the matter of said contempt.

We trust it may not be necessary to proceed to apply any drastic measures in this case to secure obedience to the orders and judgment of this court, and that defendants will render a prompt deference to the law which is binding and obligatory as well upon judges as upon all other citizens of the state.*

---

*The county judges afterward made return of full compliance with the supreme court's orders touching the county seat and were thereupon discharged from attachment on payment of costs.