The St. L., I. M. & S. Ry. Co. v. The City of St. Louis.

THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY v. THE CITY OF ST. LOUIS, *Appellant.*

1. **County Court**: ADMINISTRATIVE DISCRETION, APPEAL FROM: STATUTE. By the charter of the St. Louis & Iron Mountain Railway Company and the special act mentioned therein (Laws, 1851, p. 479; Laws, 1837, p. 271), power is given to the railroad, after having first obtained from the county court an order permitting it to do so, to build its road along or across any state or county road, or the streets and wharves of any city, town, or village, it being provided that said order may be made "if the county court is satisfied that no great injury will be done to the public." *Held,* that the right to grant the right of way is vested in the administrative discretion of the court and that there could be no review of its exercise in the circuit court.

2. ———: ———. While circuit courts have a superintending control over county courts, such control must be exercised according to the usages and principles of law.

*Appeal from St. Louis City Circuit Court.*—HON. WM. H. HORNER, Judge.

AFFIRMED.

*Leverett Bell* for appellant.

(1) The judgment of the county court in this case was appealable, there being no provision of law expressly prohibiting such appeal. R. S., sec. 1210. The appeal was taken in the same manner as an appeal from a justice of the peace to the circuit court. The case, therefore, should have been tried anew in the circuit court, under section 1210 of the Revised Statutes above referred to. (2) The instruction asked by appellant, above set forth, should have been given. The right to occupy streets in a city with the consent of the county court of the county in which such city is situated, contained in the original charter of the Iron

Mountain Railroad Company, of 1851, is a mere police regulation, which it was competent for the state legislature to change at any time, by substituting the city authorities in the place of the county court. The provision in question did not constitute a contract between the state and the railroad company. It is now well-settled law that state legislatures cannot contract as to subjects affecting public health, or public morals, so as to limit the future exercise of legislative power on those subjects, to the prejudice of the general welfare. *Butchers Union Co. v. Crescent City*, 111 U. S. 746. The essential franchise of a railroad company is the right to operate its road and receive fare and freight. The legislature has power to require existing roads to maintain cattle-guards at crossings, or to respond in damages for cattle injured through such omission. The subject comes clearly within the police power of the state, the power to regulate which resides inalienably in the state legislature. *Thorpe v. Railroad*, 27 Vt. 140. A statute requiring a railroad to fence its road is a police regulation, and one that may be prescribed after the road has been constructed even where the charter of the company is not subject to amendment. *Railroad v. Tilton*, 12 Ind. 3; *Railroad v. McClelland*, 25 Ill. 140. (3) In *Owen v. Railroad*, 83 Mo. 454, it was held that the St. Louis and San Francisco Railway Company is subject to the provisions of the constitution and laws of this state, and that a corporation created under the existing constitution cannot acquire by purchase rights from any corporation or individual, which it is forbidden by said constitution to exercise. (4) The cause tried should have been tried in the circuit court in the same manner as if it had originated there, without regarding any error, defect, or informality in the proceedings of the county court. R. S., sec. 1211. The present charter of St. Louis went into effect on October 21, 1876. Under its terms the mayor

and assembly have power and authority to grant to persons or corporations the right to construct railways in the city. 2 R. S., p. 1587, par. 11, sec. 26, art. 3. The county of St. Louis ceased to include within its limits the city of St. Louis, on October 21, 1876. (5) The plat in the present case shows that the proposed railroad tracks extend from Carondelet to Bremen, and occupy streets in the most densely-populated part of the city. As a matter of public policy, as well as of strict law, privileges of the character in question should not be granted without the consent of the municipal corporation of St. Louis.

*T. J. Portis* and *Bennett Pike* for respondent.

(1) The granting of the order by the county court was the exercise of a discretionary power from which no appeal lies. *Foster v. Dunklin*, 44 Mo. 217; *Strahan v. County of Audrain*, 65 Mo. 644; *Washington County v. Boyd*, 64 Mo. 182; *State v. Strowbridge*, 56 Mo. 129; *Syracuse Bank v. Railroad*, 9 Am. & Eng. Ry. Cases, 585; *People v. Railroad*, 42 N. Y. 217; *Enos v. Thomas*, 5 How. Pr. 359; *Simmons v. Railroad*, 4 Am. & Eng. Ry. Cases, 137; *Railroad v. Dunbar*, 5 Am. & Eng. Ry. Cases, 270; *Appeal of Kings Co. Ry.*, 2 Am. and Eng. Ry. Cases, 431; *In re Com'rs of Washington Park*, 56 N. Y. 156. (2) If an appeal from such an order were allowable, the city was not the proper party to take it. *St. Louis Zinc Co. v. Hesselmeyer*, 50 Mo. 180; *Foster v. Dunklin*, 44 Mo. 217; *City of St. Louis v. Railroad*, 66 Mo. 228. (3) If it be held that the appeal from the county court was authorized by law and was properly taken by the city, then it is insisted that the circuit court could only review the action of the county court, and not try the case *de novo*. *Foster v. Dunklin*, 44 Mo. 219; *County of St. Louis v. Lind*, 42 Mo. 348; *Bernard v. Callaway County*, 28 Mo. 37;

*Overbeck v. Galloway*, 10 Mo. 364. (4) The grant to the railway company of the right to lay its tracks along and across the streets and wharf of the city of St. Louis, in section 11 of its charter, became vested in said company upon the county court giving its assent thereto by an order duly made, after being satisfied "that no great injury would be done to the public" thereby, and such grant could not be impaired in any manner by any subsequent legislation. *Railroad v. St. Louis*, 66 Mo. 228; *City of St. Louis v. Shields*, 62 Mo. 252; *Railroad v. Laclede County*, 57 Mo. 147; *Barry County v. Railroad*, 57 Mo. 149; *Lawrence County v. Railroad*, 57 Mo. 149; *Railroad v. Cass County*, 53 Mo. 26; *Land v. Coffman*, 50 Mo. 251; *Chambers v. St. Louis*, 29 Mo. 576; *Maguire v. Railroad*, 20 Wall. 36; *Railroad v. Bailey*, 22 Wall. 215; *Dartmouth College v. Woodward*, 4 Wheat. 519; *Bank v. Oakley*, 4 Wheat. 235; *Ross v. Railroad*, 77 Ill. 127; Cooley's Const. Lim. 252; *Simmons v. Railroad*, 4 Am. & Eng. Ry. Cas. 137; *Railroad v. Dunbar*, 5 Am. & Eng. Ry. Cas. 270.

BLACK, J.—The St. Louis, Iron Mountain & Southern Railway Company presented its petition to the county court of St. Louis county, asking for the right to lay its tracks upon certain streets and alleys in the city of St. Louis. The matter was continued from time to time in order that the objections of various persons and corporations might be heard. The city of St. Louis, by its law officer, appeared and insisted that the court had no jurisdiction over the subject matter, but the court made the order as prayed for, and the city appealed to the circuit court. The proceedings remained in that court from 1876 to 1885 without any steps having been taken by either party, when the plaintiff filed a motion to dismiss the appeal, on the ground that the act of the county court was purely discretionary, and not the subject of review, and that the city was no party to the proceed-

ings, and had no right to prosecute an appeal. The motion was sustained; and the only question here is whether the appeal should have been dismissed for the reason stated in the motion.

By the charter of the St. Louis & Iron Mountain Railroad Company, and the special act therein mentioned (Laws of 1851, page 479 ; Laws of 1837, page 271), it is provided : "The company shall have full power and authority to build said road along or across any state or county road, or the streets and wharves of any town or village, whether corporate or otherwise; * * * but before such right shall vest in said company, they shall apply to the county court, of the proper county, for such right, and, having filed in the office of the recorder a plat of said road and the manner in which it is to cross said roads or streets, or other public way, and if the county court are satisfied that no great injury will be done to the public, they may, by an order of said court, give the right to said company to use the same for that purpose."

The present corporation claims to have succeeded to the rights of the former one, and it is under this special act that the county court made the order. On the other hand the city insists that the county court lost the power to give the right-of-way over the streets, and that that power became vested in the city authorities, by reason of section 56 and the fifth paragraph of section 28, of the general railroad law of 1853 (Laws of 1853, page 121), and for the further reason that, in 1874, the St. Louis & Iron Mountain Railroad Company was consolidated with the Cairo, Arkansas & Texas Railroad Company, and the name of the corporation remained unchanged. Subsequently, in the same year, the St. Louis & Iron Mountain Railroad Company was consolidated with the Cairo & Fulton Railroad Company, under the name of the present corporation ; and that

in consequence of these acts of consolidation, the present corporation became subject to the general laws.

If the right to an appeal from the order exists at all it is because of section 2, page 430, 1 Wagner's Statutes, now section 1102, Revised Statutes of 1879, and section 22, page 442, 1 Wagner's Statutes, which were first enacted in 1870, and is now section 1210, Revised Statutes. The first of these sections defines the jurisdiction of the circuit courts, and gives to them appellate jurisdiction from the judgments and orders of county courts, in all cases not expressly prohibited by law. The other, in substance, declares that, in all cases of appeal from county courts, the circuit court shall proceed to hear the case anew, as if the same had originated in the circuit court. Until 1870 the appeal accomplished nothing more than would be effected by a writ of *certiorari*. *Lacy v. Williams*, 27 Mo. 280 ; *County of St. Louis v. Lewis*, 42 Mo. 348. Now it will be seen a trial *de novo* must be had in the circuit court. While the language of section 1102 is comprehensive, for it speaks of judgments and orders, still it must be construed in connection with section 1210, and be made to apply to such judgments and orders only as are in their nature susceptible of a trial anew in the circuit court— to cases in which the circuit court may enter up a judgment of its own. In other words, the appeal can only be taken when the judgment or order appealed from is judicial. Even before the adoption of section 1210, it was held that an appeal or writ of error could not be prosecuted from an order of the county court, ministerial in its character. *St. Louis v. Sparks*, 11 Mo. 202 ; *Tetherow v. Grundy County Court*, 9 Mo. 117. The county courts act as agents, and in a ministerial character, and not judicially, in the matter of location and removal of county seats. *State ex rel. West v. Justices County Court*, 41 Mo. 44, and in many other cases that might be mentioned. These courts are but the agents

of the counties in the allowance of accounts. If the account be rejected the aggrieved party is allowed an appeal; not, however, because of the general appellate jurisdiction clause before mentioned, but because of a special statute applicable to such cases. R. S., sec. 1216; *State ex rel. Zimmerman v. Justices Bollinger County*, 48 Mo. 475.

The county court, in granting the right-of-way over the streets under the special charter provisions before quoted, acted as the agent of the state in the management of the public highways. The procedure to acquire the right, if such it may be called, is not adversary. A contest in the character of a suit at law or equity is not contemplated. The right to grant the prayer of the corporation rests in the administrative discretion of the court. The circuit court is powerless to review this discretion, for no such power is given by the law. It could not proceed to hear the evidence, and from that say whether the right should, or should not, be given. Had the county court refused to make the order, or made an order refusing the prayer of the petition, it cannot be claimed that the railroad company could have prosecuted an appeal. If this special charter provision is not available to the present corporation, then the order is a nullity, and may be so treated collaterally. Whether available or not the act of the county court is one from which the law has given no appeal. It may be questioned in many other ways. The circuit courts have a superintending control over county courts, but that control must be exercised according to the usages and principles of law. *Tetherow v. Grundy County Court*, 9 Mo. 120; *Vitt v. Owens*, 42 Mo. 512.

The order dismissing the appeal is, therefore, affirmed, on the ground alone that the order is one from which no appeal will lie. All concur.