THE STATE ex rel. S. F. POWELL et al. v. J. W. SHOCKLEE et al., Judges of County Court of Montgomery County.

In Banc, November 27, 1911.

1. CERTIORARI: Practice: Motion for Judgment: Cause at Issue. In *certiorari* the cause is at issue when relators, after the issuance of the writ and respondents' return thereto, file a motion for judgment on the pleadings.

2. ———: ———: ———: ———: Right of Relators to Sue: Waiver. The right of relators to maintain the suit in *certiorari* may be raised or attacked by motion to supersede or quash the writ filed at any time before the cause is at issue; but where respondents file no such motion, but make their return, and relators thereupon file a motion for judgment on the pleadings, the cause is at issue, and respondents must be held to have waived the question of relators' right to sue, and the cause must be heard on its merits. [Distinguishing State ex rel. v. Guinotte, 156 Mo. 513.]

3. ———: Judicial Matter Only: County Court: Removal of Office of Recorder. The writ of *certiorari* will be available only when the action sought to be reviewed is judicial in character; and in providing a suitable place, at a place other than the county seat, for a temporary office for the recorder of deeds, pursuant to the statute, the county court acts in an administrative or ministerial capacity, and its action in that behalf cannot be reviewed by the Supreme Court in a *certiorari*.

State ex rel. v. County Court.

4. ———: ———: ———: **Removal of County Officers and Courts.** The county court record recites that the courthouse had been twice burned; that there was no courthouse or other suitable building at the county seat in which to house and keep the various county offices, or in which to hold the courts or to transact the business of the county; that it was unsafe and dangerous to the records to keep them in the frame store building in which they were being kept, and it was insufficient for that purpose and afforded no room for holding the various courts of the county; and that the court was without funds at its disposal to build a courthouse or other building in which to transact the business of the county; and the court therefore ordered the sheriff to select and secure a building suitable for these purposes at a place as near the county seat as practicable, which he proceeded to do. *Held,* that the law empowers the county court to establish a temporary county seat only in case the site of the former county seat has been washed away by a river; but the action of the court was administrative, and not judicial, in character, and, therefore the Supreme Court has no authority to review its action in a *certiorari.*

5. **COUNTY COURT: Removal of County Seat: Judicial Matters: Certiorari.** Not every action of the county court is judicial in character. It is the nature of the act which determines the propriety of the writ of *certiorari,* brought to quash its proceedings. Nor does the fact that its orders assume the form of adjudications affect the character of the function of government. Where the county court ordered the county seat to be moved but gave no notice, and no parties were before the court, and the court did not attempt to pass upon or determine personal or property rights as they existed at the time, the order was not attended by the incidents of a judicial proceeding, but its action was administrative or ministerial in character; and though no statute can be found authorizing such order, that action cannot be reviewed by the writ of *certiorari.*

## Certiorari.

WRIT QUASHED.

*P. H. Cullen* for relators.

(1) The county court did not have power to order all the county officers, courts and public records removed from the county seat, and the record should be quashed. This contest has been before this court

several times before. State ex rel. v. Elkins, 130 Mo. 9; State ex rel. v. White, 162 Mo. 533. (2) The county court has no power to select a temporary county seat, except in cases where the seat of justice shall have been destroyed by erosion of the banks of any river. The specification of this particular cause by a familiar rule of construction excludes all others. R. S. 1909, sec. 3674. (3) The order made by the county court of Montgomery county operates to remove the county seat and the county court has no jurisdiction to make such an order. Constitution, art. 9, sec. 2. Even the Legislature of the State is by express constitutional provisions prohibited from passing any local or special law locating or changing county seats. Constitution, art. 4, sec. 53. (4) Under the Constitution and laws of the State, judicial power is vested in the county courts. Constitution, art. 6, sec. 36; Benton Co. v. Morgan, 163 Mo. 661; R. S. 1909, art. 5, chap. 35. (5) The office of a writ of *certiorari* is to bring to a superior court for review the record and proceedings of an inferior court, an officer, or a tribunal exercising judicial functions, to the end that the validity of the proceedings may be determined, excesses of jurisdiction restrained, and errors, if any, corrected. It is not essential, however, that the proceedings should be strictly and technically judicial in the sense in which that word is used when applied to courts of justice, but it is sufficient if they are quasi judicial. It is enough if they act judicially in making their decision, whatever may be their public character. Herrick v. Arbela, 54 Iowa, 340; Welch v. Wetzel County Ct., 29 W. Va. 63; State ex rel. v. Johnson, 138 Mo. App. 314; State ex rel. v. Elkins, 130 Mo. 90; Snoddy v. County of Pettis, 45 Mo. 361; Owens v. County Court, 49 Mo. 372; State ex rel. v. County Court, 47 Mo. 594. (6) The terms "seat of justice" and "county seat" are synonymous, and as used in our Constitution and laws mean the place where the courthouse and county

officers are located, the place where the courts are held and the records kept. Babcock v. Hahn, 175 Mo. 139. (7) Section 10,365, as amended by laws of 1909, which undertakes to vest the county court with power to locate the recorder's office at some place other than the county seat, is unconstitutional and void. Constitution, art. 4, sec. 53; Constitution, art. 9, sec. 2; Babcock v. Hahn, 175 Mo. 136.

*Harry C. Black* for respondents; *W. M. Williams* of counsel.

(1) Relators are not entitled to maintain this proceeding. The only interest possessed by them is that which they have in common with every other citizen and taxpayer of the county. They do not come within the rule authorizing a taxpayer to intervene where proceedings are about to be taken which will increase or affect his property rights. It does not appear that they reside at Danville or will be inconvenienced or affected injuriously in any manner by the removal of the records and county officers from that place. 4 Ency. Pl. and Pr. 162; State ex rel. v. Wilson, 129 Mo. App. 247; 4 Ency. Law 162; State ex rel. v. Ayers, 116 Mo. App. 90. (2) The county court, in providing a building or house for the safe-keeping of the county records and offices for the transaction of the county business, acts simply as the agent or representative of the county, and its proceedings are administrative and ministerial, and not judicial. *Certiorari* will not lie to review ministerial acts of the county court. State ex rel. v. Clark County, 41 Mo. 44; In the Matter of Saline County Subscription, 45 Mo. 52; Phelps County v. Bishop, 46 Mo. 68; Hockaday v. Newsom, 48 Mo. 196; State ex rel. v. Harrison, 141 Mo. 12; State ex rel. v. White, 162 Mo. 533; State ex rel. v. Elkins, 130 Mo. 90; State ex rel. v. Reynolds, 190 Mo. 588. (3) The order of the county court directing the transfer, temporarily, of the recorder's office and

the deed records therein, for safe-keeping, to the court-house in Montgomery City, is expressly authorized by the statute, under the conditions existing at Danville. R. S. 1909, sec. 10365. This statute is not in conflict with section 2, article 9, of the Constitution, concerning the removal of a county seat. It simply provides for the temporary safe-keeping of valuable county records, in which every property-owner is interested, in an emergency, until suitable buildings can be provided at the permanent seat of justice. This is not prohibited by the Constitution, which must receive a construction that will not lead to unreasonable consequences or results that will deprive the counties of the right to temporarily safeguard and protect their records when the necessity for such action arises. State v. Bixman, 162 Mo. 34; Cooley's Constitutional Limitations (7 Ed.), 108; Lewis's Sutherland on Statutory Construction (2 Ed.), 488. (4) The county court did not undertake to remove the county seat. An emergency arose in consequence of the burning of the court-house that required the county court to provide temporary offices for the transaction of the public business, and for the safe-keeping of its valuable records, and a room for the holding of the courts for the time being. There was no suitable building—in fact, no sufficient building at all—at the county seat that could be obtained for that purpose. It was the duty of the county court, representing the people of the county, in this emergency, to select a building as near the county seat as practicable, so that the records might not be destroyed and the business of the county might be carried on. A county court is not required to accomplish impossibilities, nor is it to permit the county to become disorganized and a cessation of the public business, and its records be subjected to destruction because of the inability to secure a suitable building at the county seat. Herndon v. Hawkins, 65 Mo. 265; Boldin v. Ewart, 63 Mo. 332; Broom's Legal Maxims,

184; Sevier v. Teel, 16 Tex. 372. (5) *Certiorari* only brings up for review the record of the lower court or tribunal, and the inquiries raised are jurisdictional in their nature. If, in an emergency, the county court has power to select buildings for temporary use outside of the county seat, then, if it be suggested that the discretion may be abused, the answer is that other remedies than *certiorari* must be resorted to to prevent such abuse. The record only can be looked to in determining whether the court exceeding its powers. State ex rel. v. St. Louis, 207 Mo. 1. c. 366.

KENNISH, J.—This is an original proceeding in this court by *certiorari*. The relators are assessed taxpaying citizens of Montgomery county and respondents are the judges of the county court of that county. The object and purpose of the proceeding is to have brought before this court and quashed the record of the county court of Montgomery county, made and entered at a regular term thereof on the 8th day of February, 1911, in the matter of the removal of certain records and offices from the town of Danville, the county seat of said county, to the city of Montgomery in said county. The writ of *certiorari* was granted as prayed and the respondents in due time made return thereto. The relators filed a motion for judgment on the pleadings and the cause is thus at issue.

It appears from the record, as certified and filed in this court, that the proceedings sought to be quashed contained two separate orders of the county court and deal with two distinct subjects. In the first it is recited that it appeared to the court that the courthouse at Danville, the county seat, was twice burned and that there was then no suitable building at said county seat in which to keep the office of recorder of deeds. The order then refers to section 10,365, Revised Statutes 1909, which is as follows:

"The recorder shall keep his office at the seat of justice, and the county court shall provide the same with suitable books, in which the recorder shall record all instruments of writing authorized and required to be recorded. If there is no courthouse or other suitable county building at the seat of justice, the county court shall provide an office for the recorder at any other place in the county where there is a courthouse and courts of record are held."

The court makes a finding of facts which on its face brings the case within the provisions of said statute authorizing the removal of the recorder's office, and upon such facts orders and directs the recorder of the county to remove his office and the records thereof to the courthouse at Montgomery City. It further appears from the return of the respondents that the office of recorder was removed, in accordance with the order of the county court.

The second order, made on the same day, also recites that the courthouse was twice burned and that there was then no courthouse or other suitable building in which to house and keep the various county offices and the records of the same, or in which to hold the courts or to transact the business of the county. at the town of Danville, the county seat of said county; that the frame store building in which the records were then kept was insufficient, unsafe and dangerous to keep the records in, and afforded no room for holding the various courts of the county; that the court was without funds at its disposal to build a courthouse or other building in which to transact the business of the county, etc. By reason of the foregoing facts the court found that an emergency had arisen, and the sheriff of the county was ordered and directed to select and secure a suitable building for the purposes aforesaid, at a place as near the county seat as was practicable.

On the same day the sheriff filed his report showing that he had complied with the order of the court and had found a suitable building at the city of Montgomery City. On the same day the county court considered the report of the sheriff, approved it and made an order directing the sheriff to remove the records and offices of the county to Montgomery City and that the same be located in the building selected by the sheriff for that purpose, and that thereafter the county offices should be kept there and the business of the county transacted and the courts of the county held at said temporary seat of justice until a courthouse or other suitable building should be provided at Danville, the county seat. The return contains another report of the sheriff showing that he had moved the offices and records of the county to Montgomery City as ordered.

Relators moved for judgment on the pleadings that the proceedings of the county court be quashed, for the following reasons:

"1. Because the return of respondents herein shows no cause why said proceedings should not be quashed.

"2. Because the return of respondents shows that said proceedings are and were null and void and contrary to and without warrant of law.

"3. Because said county court had no authority to move said county seat from Danville to Montgomery City.

"4. Because said return shows that Danville is the county seat, and that said county court has ordered all records to be moved to Montgomery City and all courts to sit there."

I. Respondents have not challenged the regularity of the issuance of the writ, by motion to supersede or quash, but they make the point in their brief that, as relators have no interest in the proceedings sought to be quashed, except such as is common to every other

citizen and taxpayer of the county, they are not entitled to maintain this action. Relators reply that as respondents have not filed a motion to supersede or quash the writ, the question of proper parties is waived and that only the merits of the case can now be considered. In the case of State ex rel. v. Guinotte, 156 Mo. 513, it is stated as the law that after the writ is issued and the record of the inferior court has been certified in response thereto, the discretionary stage as to the issuance of the writ has passed and it is then the duty of the court to hear and determine the cause on its merits, but as we understand that case the part of the opinion announcing that doctrine was not concurred in by a majority of the members of the court and therefore the case need not be regarded as a precedent upon that point. (The opinion on file in that case discloses that the word "now" instead of the word "not" is used in the sentence, "In this case the record being properly certified, the time for judicial discretion which we might have exercised in refusing the writ has *not* passed . . ." as that sentence appears in 156 Mo. l. c. 528.) As the application for a writ of *certiorari* is made *ex parte* and may be granted by one member of the court, no good reason is perceived why the question as to whether the writ was improvidently granted may not be inquired into when the respondents are brought into court and for the first time have an opportunity to raise that issue, as is the recognized practice in the case of other original proceedings. The weight of authority favors the right of respondents to attack, by proper motion, the regularity of the issuance of the writ. [State ex rel. v. Fraker, 168 Mo. 445; 6 Cyc. 813; 4 Ency. Pleading and Practice 234.] But the respondents in this case filed no motion to supersede or quash the writ, and assailed it at the hearing only on the ground of the want of sufficient interest of the relators to maintain the suit. It is a general rule of law that by going to

trial on the merits the question of a defect of parties
is waived. And in this case, treating the motion for
judgment as a general demurrer and giving the re-
spondents the benefit of the principle that a demurrer
searches the whole record and is taken as a demurrer
to the pleading that contains the first fatal defect, we
are of opinion that the question of proper parties is
not presented and that respondents have waived their
right to raise such question when the case is heard
on the merits. [Sec. 1804, R. S. 1909; 6 Ency. Plead-
ing and Practice 375; 6 Cyc. 815.]

II. It is contended by respondents that the rec-
ord sought to be quashed disclosed proceedings by the
county court which were administrative and minis-
terial in character and not judicial, and therefore that
such proceedings cannot be reviewed by *certiorari*.

It is the settled law that *certiorari*, like a writ of
error, will lie only when the action sought to be re-
viewed is judicial in character. It will not lie if such
action is the exercise of a ministerial or legislative
function of government. [State ex rel. v. Reynolds,
190 Mo. l. c. 588; In the Matter of the Saline County
Subscription, 45 Mo. 52; 4 Ency. Pleading and Prac-
tice 11; 6 Cyc. 750.]

Section 10,365, supra, expressly authorizes the
county court to provide, at a place other than the
county seat, an office for the recorder of deeds, under
the conditions as found and set forth in the order
sought to be quashed. And in providing a suitable
place, pursuant to the statute, the court was acting in
a purely administrative or ministerial capacity. Its
action was not judicial in any sense. Whether the law
under which the court was acting was valid or not
is immaterial; for, if invalid, the action taken by the
court would be none the less administrative or minis-
terial, and neither would it be judicial by reason of
that fact.

The statute requires the recorder to keep his office at the county seat and the removal contemplated under the conditions stated is clearly of a temporary character. While the law makes it the duty of the county court to provide a suitable building at the county seat in which the recorder may keep his office, and as soon as that is done it would be the plain duty of the recorder to remove and keep his office there (State ex rel. v. Smith, 46 Mo. 60), yet we think the court was acting in an administrative capacity in making the order for the removal of the office of the recorder and that its action to that extent cannot be reviewed by this writ.

III. The order of the county court under which the other offices and records were removed to Montgomery City was without any semblance of statutory authority. The law empowers the county court to establish a temporary county seat only in a case where the site of a former county seat has been washed away by a river. [Sec. 3674, R. S. 1909.] The fact that express legislative authority was essential to authorize a county court to provide a temporary county seat, even under such calamitous conditions, excludes the theory of the existence of power to establish a temporary county seat under the facts of this case.

But the question immediately confronting us now is not whether the court was without authority in the action taken, but rather, Was the court engaged in the exercise of judicial power in making the order sought to be quashed? It is of no avail to relators to show that the order was not within the jurisdiction of the court and for that reason void, unless they can further show that such action was judicial in its caracter. What the respondents were attempting to do was in effect to remove the county seat, and relators complain in their petition that "the county court has no jurisdiction to enter an order effecting the removal

of the county seat, nor has it any power or authority
to remove the records from the county seat to Mont-
gomery City or any other place." And in their brief
relators make the point that "the order made by the
county court of Montgomery county operates to re-
move the county seat, and the county court has no ju-
risdiction to make such an order."

The question is thus presented whether the county
court, in taking the action shown in the record before
us, was engaged in a judicial proceeding and exercis-
ing judicial functions.

Discussing the question as to what is judicial ac-
tion of a county court, subject to review by *certiorari,*
this court, in the case of In the Matter of Saline County
Subscription, 45 Mo. 1. c. 53, said: "Judicial action is
an adjudication upon the rights of parties who in gen-
eral appear or are brought before the tribunal by no-
tice or process, and upon whose claim some decision or
judgment is rendered. It implies impartiality, disin-
terestedness, a weighing of adverse claims, and is in-
consistent with discretion on the one hand—for the
tribunal must decide according to law and the rights of
the parties—or with dictation on the other, for in the
first instance it must exercise its own judgment under
the law, and not act under a mandate from another
power. The tribunal is not always surrounded with
the machinery of a court, nor will such machinery nec-
essarily make its action judicial. A county court is
certainly a judicial body for some purposes, but no
more so for the name, nor for the fact that it has a seal
and a clerk and keeps a record. The character of its ac-
tion in a given case must decide whether that action is
judicial, ministerial or legislative, or whether it be sim-
ply that of a public agent of the county or state, as in
its varied jurisdiction it may by turns be each." And in
the case of State ex rel. v. Elkins, 130 Mo. 1. c. 104-105,
speaking through BARCLAY, J., the court said: "It is
very true that the subject-matter of changing the loca-

tion of a county seat belongs to the administrative department of the county court. That has been often asserted in decisions of the Supreme Court, the latest of which is St. Louis, etc., Co. v. City, 92 Mo. 165. . . Indeed, the whole proceedings for the change of a county seat belong to the same general department of governmental activity which that court exercises in the control of the county property and the county finances." See also State ex rel. v. Clark County, 41 Mo. 44; Railway Co. v. City of St. Louis, 92 Mo. 160; St. Louis v. Sparks, 11 Mo. 201; Tethrow v. Grundy County Court, 9 Mo. 118.

The fact that orders assuming the form of adjudications were made by the county court cannot affect the character of the function of government exercised, for, as said in the Elkins case, supra, "it is the nature of the act which determines the propriety of the writ."

The action of the county court sought to be quashed in this proceeding is not attended by the incidents of a judicial proceeding. No notice was given, no parties were before the court, and the court did not attempt to pass upon or determine personal or property rights, as they existed at the time the action was taken. On the other hand, such action was clearly administrative and ministerial in character, in that it had to do with the public affairs of the county, looking solely to its future welfare.

Although an inspection of this record makes it apparent that the action of respondents, in so far as it was attempted to remove the county seat from the place where it had been established by law, and from which, as admitted in the pleadings, the qualified voters had repeatedly refused to remove it, was without legal authority, yet such action was not judicial in character and therefore not subject to review by the writ of *certiorari*.

For the foregoing reasons we hold that the writ

should be quashed and it is so ordered.    All concur—
*Lamm, J.,* in separate opinion.

## SEPARATE CONCURRING OPINION.

LAMM, J.—The complained of acts of the county
court which, in a round-about way, temporarily re-
moved the county seat of Montgomery county from
Danville to Montgomery City, were not *judicial.* That,
under such circumstances, *certiorari* is not the appro-
priate remedy seems quite clear.

To justify the county court, it was argued with
graphic animation at our bar that Danville (in the
flux of time and run of events) had become, to use
counsel's own words, "only a wide place in the high-
way,"—this, because of natural decay, but mostly be-
cause of a fire.    Whereby would not respondents
have us believe that peradventure Danville had
been abnormally elongated and, by the self-same stroke,
its width had been abnormally cut down? In relators'
brief in reply, we are told that the aforesaid fire hap-
pened ten years gone.    It may be that the prick and
smart of the suggestion that such ten-year-old fire left
Danville "only a wide place in the highway," con-
strained learned counsel in his reply to indulge in an
hypothesis running somewhat *contra,* thus (quoting):

"If this ancient and historic seat of justice is to
be likened to the Niobe of Nations standing in voice-
less woe, holding 'an empty urn within her withered
hand,' we must not forget that such has been her
plight for more than ten long years, and that the emer-
gency-producing fire is one, 'whose holy dust was scat-
tered long ago.' "

At first blush, it might seem there was something
of substance in those suggestions pro and con, having
to do with the legal rights of the parties.    It might
seem we had call to determine the issue thus raised,
viz., whether Danville was really and truly a wide

place in a road (on one hand), as put by respondents' counsel, or a Niobe of Nations holding an empty urn within her withered hand (on the other), as put by relators. But, however inviting that field of exploration, contemplation and wisdom are bound to say to this court: Hands off! Meddle not therewith. Wherefrom it results that our brother KENNISH was justified in making no comment at all on such novel and extraneous issue. Is the calm and delicate equipoise of an appellate court to be disturbed by mere color of feeling or the charm of rhetorical flourish in briefs or *ore tenus?* Judicial commentary should be confined to those pertinent issues susceptible of being judicially determined. Mere comment, without determining anything, spells danger. Thereto seemingly agrees Lord Coke, viz.: "A commentary should not be like unto the winterly sun, that raiseth up greater and thicker mists and fogs than it is able to disperse." (*Vide,* Preface to Calvin's Case, 7 Rep.) I give my vote to agree.