Asalee Janice DARR, Plaintiff-Respondent,

v.

Marie McDaniels DARR, Defendant-Appellant.

No. 7357.

Springfield Court of Appeals.

Missouri.

Jan. 30, 1956.

Lawrence J. McKim, Samuel J. Kevrick, St. Louis, for defendant-appellant.

Briney & Welborn, Bloomfield, for plaintiff-respondent.

STONE, Judge.

In this action for damages for alleged alienation of affections of one Ernest E.

Darr (hereinafter referred to as Ernest), defendant, Ernest's second wife (hereinafter called Marie), appeals from an adverse judgment of $6,000 obtained by plaintiff, the first wife (hereinafter called Asalee). Ernest, then about nineteen years of age, married Asalee, then about fifteen years of age, on February 1, 1943. Of this union five children were born who, at the time of trial on May 11, 1954, were from ten to three years of age. Marie, whose age is not given but who has two children by a prior marriage and three grandchildren, lived about 1½ miles north of the Darr farm home on R.F.D. 1, Advance, Missouri. Following the death of Clay McDaniels, Marie's husband, during July, 1950, Ernest made a number of trips with Marie in her jeep—"she said they were settling up * her (husband's) estate."

On August ·16, 1950, the Probate Court of Stoddard County adjudged Asalee "to be an insane person * * * in need of hospitalization at a state hospital for the insane" and issued a warrant commanding Ernest to deliver Asalee, as a county patient, to the superintendent of State Hospital No. 4 at Farmington, Missouri. After Asalee had been under treatment at Farmington about two months, Ernest told her that "he no longer loved me (Azalee), that they (Ernest and Marie) were meant for each other and he was going to have her (Marie)"; but, after Asalee's discharge from the hospital about November 16, 1950 (and she had no subsequent hospitalization or treatment), she nevertheless returned to her home and undertook to live with Ernest. During the latter part of November, 1950, Asalee found in Ernest's pocket an envelope containing a three-page letter from Marie, then in St. Louis, which had been sent to Ernest at Brownwood, Missouri, a postoffice through which the Darr family did not regularly receive mail. Marie addressed this letter to Ernest as "my dearest darling," freely interspersed it with other expressions of endearment, and, with the jaunty air of an exuberant and exultant huntress who already had ensnared her quarry, flippantly challenged Ernest to "just wait until I

am Mrs. Ernest Darr, will I ever make you toe the mark—ha—aren't you scared."

In January, 1951, Ernest went to work in St. Louis, where Marie was living at the time, returning to Asalee on weekends; and, in 1952, Ernest took Marie on a vacation trip to Michigan. On some date not fixed in the record (but prior to June, 1952), Ernest instituted an action for divorce against Asalee in St. Louis. After Asalee had retaliated by filing a similar action against Ernest in Stoddard County during June, 1952, Ernest "begged (Asalee) to take him back" and she did so. But, continuing his work in St. Louis, Ernest came home only "every two weeks," and the parties separated finally on May 30, 1953. Asalee was granted a divorce by the Circuit Court of Stoddard County on October 19, 1953; and, on December 22, 1953, Ernest and Marie were married in St. Louis. Upon trial of this action, neither Ernest nor Marie testified.

Since we assume for the purposes of this opinion that, as Marie's counsel contend, the adjudication of Asalee's insanity on August 16, 1950, was not void (although Asalee's brief suggests meritorious questions raising substantial doubt as to the validity of that adjudication), the only complaint to be ruled on this appeal is that the trial court "erred in permitting plaintiff (Asalee) to bring the action in her own name, (she) having been adjudicated insane." In Marie's answer, the only pleading filed on her behalf prior to trial, she admitted the marriage of Ernest and Asalee on February 1, 1943, and denied generally all other allegations in Asalee's petition. When the case came on for trial on May 11, 1954, the record shows that, after both parties had announced ready, after the jury had been qualified and sworn, after the opening statements of counsel had been made, and after Asalee had been called to the witness stand, Marie's counsel filed a "Motion to Dismiss" in which for the first time Asalee's insanity was suggested and it was asserted that the instant suit "can be prosecuted only in the name of a duly appointed guardian and next friend."

 " 'That the plaintiff has not legal capacity to sue,' " which has reference to legal disability such as infancy, insanity, authority in a representative capacity, etc. [Gruender v. Frank, 267 Mo. 713, 186 S.W. 1004, 1006(3); Odom v. Langston, 351 Mo. 609, 173 S.W.2d 826, 831–832(9)], is an objection which "may be raised by motion whether or not the same may appear from the pleadings and other papers filed in the cause" [Section 509.290], but any such motion "shall be made within the time allowed for responding to the opposing party's pleading or, if no responsive pleading is permitted, within twenty days after the service of the last pleading." Section 509.-330. (Unless otherwise specifically noted, all statutory references herein are to RSMo 1949, V.A.M.S.) The provisions of Section 509.340 indicate that an objection predicated on plaintiff's want of legal capacity to sue, which does not go to the jurisdiction of the court to try the case but raises only a question of procedure [Crowl v. American Linseed Co., 255 Mo. 305, 164 S.W. 618, 625(1)], is waived "by failure to assert the same by motion within the time limited by section 509.330". However, we need not and do not rest our holding in the case at bar on that alone, for Marie's answer in the nature of a general denial raised no issue as to Asalee's legal capacity to sue [Hendon v. Kurn, 351 Mo. 980, 174 S.W.2d 806, 810(4); Ashton v. Penfield, 233 Mo. 391, 418, 135 S.W. 938, 944; Baxter v. St. Louis Transit Co., 198 Mo. 1, 95 S.W. 856, 858–860(1); Wolford v. Scarbrough, 224 Mo.App. 137, 21 S.W.2d 777, 779(3); Katz v. North Kansas City Development Co., 223 Mo.App. 606, 14 S.W.2d 701, 709(10)] and, by her failure to include in her answer any "specific negative averment" challenging Asalee's capacity to sue in her own name [Section 509.140], Marie then waived any such objection [Section 509.400], *if* it had not been irrevocably waived theretofore. Accordingly, Marie's belated and untimely motion to dismiss filed during trial properly was overruled. Consult Hendon v. Kurn, supra, 174 S.W.2d loc. cit. 809–810(3–5); State ex rel. Missouri State Highway Board, to Use and Benefit of Fredonia Portland Cement Co. v. Cox, 318 Mo. 387, 1 S.W.2d 787, 789(3); State ex rel. Powell v. Shocklee, 237 Mo. 460, 141 S.W. 614, 616(1); State ex rel. Bell v. United States Fidelity & Guaranty Co., 236 Mo. 352, 139 S.W. 163, 167(2); Gregory v. McCormick, 120 Mo. 657, 25 S.W. 565, 566(1); Robinson v. Hood, 67 Mo. 660, 661(3); Leslie v. Mathewson, Mo.App., 257 S.W.2d 394, 397 (9); Hornig v. Jones, Mo.App., 269 S.W. 399(2); Wright v. Wayland, Mo.App., 188 S.W. 928, 929–930(2); Nichols v. R. J. & W. M. Boyd Const. Co., 187 Mo.App. 127, 172 S.W. 1183, 1184(2); City of Bevier v. Watson, 113 Mo.App. 506, 87 S.W. 612, 614(2).

 There is no indication in the transcript before us that, in the insanity proceeding apparently instituted to provide hospital treatment for Asalee as a county patient [Sections 202.120 to 202.160; repealed Laws of 1955, S.B. 59], any guardian of her person or curator of her estate was appointed. Section 458.070. But, even if any such appointment were made, title to Asalee's property, including her cause of action against Marie for alienation of Ernest's affections, remained in Asalee [Redmond v. Quincy, O. & K. C. R. Co., 225 Mo. 721, 126 S.W. 159, 161(2); Gibson v. Shull, 251 Mo. 480, 158 S.W. 322, 324(3); Williams v. Maxwell, Mo., 82 S.W.2d 270, 274(10); Kleber v. Carlos, Mo., 202 S.W. 2d 865, 866(4)], and she continued to be the real party in interest, in that she was the one entitled to any damages recovered on such cause of action. State ex rel. Bell v. United States Fidelity & Guaranty Co., supra, 139 S.W. loc. cit. 167; City of Bevier v. Watson, supra, 87 S.W. loc. cit. 614. The mere fact that one is of unsound mind does not make her incapable of suing or being sued [Beil v. Gaertner, 355 Mo. 617, 197 S.W.2d 611, 614; Burger v. Boardman, 254 Mo. 238, 259, 162 S.W. 197, 203; Allen v. Ranson, 44 Mo. 263, 265(1)]; and where, as here, an insane plaintiff has been " 'blest by success' ", a situation is presented which is quite different from that where the result is adverse to an insane defendant [Allen v. Kelso, Mo., 266 S.W.2d 696, 704 (7)—cf. Cox v. Wrinkle, Mo., 267 S.W.2d 648, 652; Reineman v. Larkin, 222 Mo. 156,

171, 121 S.W. 307, 311], for the primary purpose of the statutes and principles pertaining to guardianship is to protect the rights of the incompetent. Kleber v. Carlos, supra, 202 S.W.2d loc. cit. 866; Burger v. Boardman, supra, 162 S.W. loc. cit. 203. That end obviously has been achieved in the instant case; and, if Asalee "now needs protection by representation or guardianship, there is ample judicial and statutory authority for providing such protection." Allen v. Kelso, supra, 266 S.W.2d loc. cit. 704.

Marie having waived, as we have heretofore found, any objection predicated on the alleged want of capacity of Asalee to sue in her own name, the judgment for Asalee, as plaintiff, should be and hereby is affirmed.

McDOWELL, P. J., and RUARK, J., concur.