

# SUPREME COURT OF MISSOURI
## en banc

RUTH CAMPBELL, ET AL.,              )
                                    )
                    Appellants,     )
                                    )
vs.                                 )        No. SC94339
                                    )
COUNTY COMMISSION OF                )
FRANKLIN COUNTY,                    )
                                    )
                    Respondent,     )
                                    )
and                                 )
                                    )
UNION ELECTRIC COMPANY,             )
d/b/a AMEREN MISSOURI,              )
                                    )
                    Respondent.     )

### APPEAL FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
Honorable Robert D. Schollmeyer, Judge

*Opinion issued February 3, 2015*

Several individuals and the Labadie Environmental Organization (Appellants) filed a petition for writ of certiorari with the circuit court challenging the legality of the Franklin County Commission's (commission) adoption of zoning amendments allowing Union Electric Company, d/b/a Ameren Missouri (Ameren) to build a coal-ash landfill adjoining its Labadie power plant. The circuit court entered judgment in favor of the commission and Ameren.

Appellants raise two points on appeal.  First, Appellants argue that the circuit court erred by dismissing Count I of their petition, which alleged that the commission failed to conduct a legally sufficient hearing as required by section 64.875[1] prior to adopting the zoning amendments allowing coal-ash landfills. Second, Appellants argue that the circuit court erred in entering judgment in favor of the commission and Ameren on Count II, which alleged that the zoning amendments are invalid for failing to promote public health, safety, and welfare.

This Court holds that the circuit court erred in dismissing Count I of Appellants' petition asserting that the commission failed to conduct a legally sufficient hearing prior to adopting the zoning amendments.  Consequently, it is unnecessary to determine whether the zoning amendments promote public health, safety and welfare because the circuit court must first determine whether the commission conducted a legally sufficient hearing. The circuit court's judgment is reversed, and the case is remanded.[2]

## I. Facts

Appellants filed a petition for a writ of certiorari pursuant to section 64.870.2 challenging the commission's amendment of the Franklin County Unified Land Use Regulations to permit the construction of coal-ash landfills

[1] All statutory citations are to RSMo 2000.

[2] After an opinion by the court of appeals, this Court granted transfer.  Mo. Const. art V., § 10. This opinion incorporates, without further attribution, rationale set forth in opinions authored by the Honorable Lisa Van Amburg and the Honorable Patricia Cohen of the Missouri Court of Appeals, Eastern District.

"contiguous to the boundary of the property upon which a public utility power plant is situated." Count I alleged that the commission's adoption of the amendments was unlawful because the commission failed to conduct a valid public hearing as required by section 64.875. Count II alleged that the zoning amendments are unlawful because they do not promote the health, safety, and general welfare of the citizens of Franklin County.

In their petition, Appellants alleged that Ameren publicly announced a proposal to build a coal-ash landfill on the land it had recently acquired near the Labadie plant. Appellants alleged that Ameren's Labadie plant is the only public utility power generation plant in Franklin County and, per the proposed zoning amendments, the only possible location for the coal-ash landfill. Appellants alleged that the chairman of the Planning and Zoning Commission informed the speakers at the public hearing that they could not discuss Ameren or its proposed site for a coal-ash landfill near the Labadie power plant. Appellants further alleged that the chairman not only told the speakers to not discuss Ameren or the Ameren site, but that county officials actually "interrupted speakers when they attempted to discuss Ameren's proposed Labadie landfill site ...." Finally, Appellants alleged that the commission acted unlawfully and unreasonably by adopting the landfill zoning amendments without holding a legally sufficient hearing as required by section 64.875 and article 14, section 321 of the unified land use regulations of Franklin County.

3

After the petition was filed, the circuit court issued a writ of certiorari to the commission, directing it to provide the court with a certified copy of the complete record pertaining to the commission's decision. Ameren filed a motion to intervene on the ground that Appellants' challenge to the zoning amendments was a challenge to Ameren's "right to create, operate, and maintain a utility waste landfill" on its property adjacent to the Labadie power plant. The circuit court sustained Ameren's motion to intervene.

In January 2012, the commission filed its return and certified the record of its proceedings to the circuit court. In February 2012, the commission and Ameren filed motions for judgment on the pleadings pursuant to Rule 55.27(b) or, in the alternative, to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 55.27(a)(6).[3] The motions to dismiss asserted that Appellants failed to state a claim for relief because the allegations in the petition demonstrated that the commission conducted a legally sufficient hearing. In April 2012, while the motions to dismiss were pending, Ameren and the commission moved for appointment of a referee to take additional evidence. The court

---

[3] Under the common law, issuance of a writ of certiorari must be challenged by filing a motion to quash, sometimes referred to as "motion to dismiss" or "motion to recall the writ." *See State ex rel. Powell v. Shocklee*, 141 S.W. 614, 616 (Mo. 1911); *see generally* 14 C.J.S. Certiorari § 69-85 (2014) (discussing motion to quash or dismiss writ of certiorari). No provision in section 64.870 alters this procedure. For purposes of this appeal, the motions to dismiss Count I are treated as common-law motions to quash the writ. *See State ex rel Modern Fin. Co. v. Bledsoe,* 426 S.W.2d 737, 740 (Mo. App. 1968) (treating motion attacking issuance of writ as motion to quash).

overruled these motions. In May 2012, the circuit court entered an order sustaining the motions to dismiss.

Although the court sustained the motions to dismiss Count I, the allegations in Count II remained unresolved. In July 2012, the circuit court set a deadline for the parties to file objections to the record. In September 2012, months after sustaining the motions to dismiss, the court issued an order resolving all issues regarding the scope of the record. The County filed its corrected record in October 2012. Finally, in January 2013, after briefing and argument by the parties, the circuit court rejected Appellants' claim in Count II and determined that the zoning amendments were valid. This appeal follows.

## II. Standard of Review

The parties disagree on the standard of appellate review regarding Appellants' claim that circuit court erred by dismissing Count I. Appellants assert that this Court's review of the circuit court's judgment dismissing Count I is limited to reviewing the petition to determine whether Appellants asserted a valid claim that the commission failed to conduct a legally sufficient hearing as required by section 64.875. In contrast, Ameren asserts that this Court's review is limited to the commission's decision and that this Court should review the factual record and determine not only whether Appellants stated a claim but also whether Count I has merit. In short, Appellants seek review of the sufficiency of the petition, while Ameren seeks a decision on the merits. Ameren's argument is foreclosed by the

5

certiorari procedure established in section 64.870.2 and by the scope of this Court's appellate jurisdiction.

I. Section 64.870.2

Section 64.870.2 establishes the procedure for judicial review of Appellants' challenge to the zoning amendments. *Gash v. Lafayette Cnty*., 245 S.W.3d 229, 234 (Mo. banc 2008). Section 64.870.2 provides that, after the petition is presented to the circuit court, the court "shall allow a writ of certiorari directed to the board of adjustment or the county commission, respectively, of the action taken and data and records acted upon, and may appoint a referee to take additional evidence in the case." The circuit court "may reverse or affirm or may modify the decision brought up for review." *Id.* Finally, the statute provides the procedure on appeal:

> [a]fter entry of judgment in the circuit court in the action in review, any party to the cause may prosecute an appeal to the appellate court having jurisdiction in the same manner now or hereafter provided by law for appeals from other judgments of the circuit court in civil cases.

By authorizing the circuit court to reverse, affirm or modify the decision brought up for review, the statute is premised on the assumption that the court will address the merits of the zoning challenge according to the record, with the right of appeal thereafter. The statute defines the right of appeal by authorizing an appeal of the final judgment of dismissal "in the same manner now or hereafter provided by law for appeals from other judgments of the circuit court in civil cases." The procedure outlined by section 64.870.2 is similar to standard civil

6

procedure in all cases in that it requires a party to first challenge the zoning decision in the circuit court and, following a decision by the circuit court, proceed with an appeal as in any other civil case.

In this case, the circuit court did not reverse, affirm or modify the decision brought up for review in Count I. Instead, pursuant to the motions to dismiss filed by Ameren and the commission, the circuit court dismissed Count I at the pleading stage for failure to state a claim. The statute does not require an appellate court to conduct a de novo factual review of the record and make a decision on the merits when the circuit court dismissed or quashed the writ for failure to state a claim before the parties filed a complete record.

Ameren relies primarily on *State ex rel. Modern Finance Co. v. Bledsoe*, 426 S.W.2d 737 (Mo. App. 1968), to support its position that this Court's review must extend to the ultimate merits of Appellants' claims. In *Bledsoe*, the court recognized that, in a certiorari proceeding, the respondent has two choices once the writ is issued. The respondent may file a return in response to the writ or, before the return is filed, file a motion to dismiss or quash the writ. *Id.* at 740. If the respondent files a return, the circuit court should generally rule on the merits of the petition based on a review of the record. *Id.* If the respondent files a motion to dismiss or quash before the return is filed, then the motion "is in effect a demurrer, confessing all facts well pleaded, but searching the whole record and

attacking the first fatal defect." *State ex rel. Berra v. Sestric*, 159 S.W.2d 786, 787 (Mo. 1942); *see also Bledsoe*, 426 S.W.2d at 740.[4]

In this case, the only issue raised by the motions to dismiss, and decided by the circuit court, was whether the allegations in Count I stated a claim for relief. It is this decision that is the subject of Appellants' first point on appeal. Given this context, there is nothing in *Bledsoe* that counsels departure from the general rule that "[a] court should construe the petition liberally and consider [quashal] only if it is quite clear that no relief can be had under any legal theory." 14 C.J.S. Certiorari § 83 (2014). Contrary to Ameren's argument, section 64.870.2 does not necessarily require an appellate court reviewing a judgment dismissing or quashing a writ of certiorari on the pleadings to undertake an original determination of the merits.

## II. Appellate Jurisdiction

The foregoing analysis is reinforced by considering the scope of this Court's appellate jurisdiction. This Court has "exclusive appellate jurisdiction" over certain cases, Mo. Const. art. V, sec. 3, and has authority to "finally determine all causes coming to it from the court of appeals, whether by certification, transfer or certiorari, the same as the original appeal." Mo. Const.

---

[4] The admonition to "search the whole record and attack the first fatal defect" refers to the analysis of a motion to dismiss prior to the respondent's filing of the return with the circuit court. *Bledsoe,* 426 S.W.2d at 740. The "whole record" cannot be the record of the lower tribunal because this option arises only when respondent files a motion to quash the writ before the return is filed. This statement does not support the proposition that an appellate court must undertake an original merits determination when reviewing the judgment sustaining a motion to dismiss.

art. V, sec. 10.   The nature of this Court's appellate jurisdiction means that when considering an appeal, this Court is "a court of review" whose "function is not to hear evidence and, based thereon, to make an original determination." *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978).   In other words, "there can be no review of a matter which has not been presented to or expressly decided by the trial court." *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 814 (Mo. banc 2011). Engaging in de novo review of the merits of commission's actions before the circuit court has reviewed the merits of Appellants' Count I would require this Court to act not as an appellate court but, instead, to make an original determination that must be made in the first instance by the circuit court.

This principle is illustrated in *State ex rel. Scott v. Smith*, 75 S.W. 586 (Mo. 1903).   *Scott* was a disbarment proceeding.  Scott appeared for trial in the circuit court and filed an application for a change of venue.  The circuit court overruled the motion, heard the evidence and rendered a judgment of disbarment.   The court of appeals held that the circuit court erred in refusing the application to change venue.  Instead of remanding the case to the circuit court, the court of appeals determined the case on the merits.  *Id*. at 587.  Scott filed a writ of certiorari with this Court challenging the authority of the court of appeals to enter a judgment of disbarment.   In words equally applicable here, this Court held that the court of appeals "exceeded its legitimate powers" by going beyond the issue presented and deciding the case on the merits.  *Id.* at 590.

In this case, Ameren sought and obtained a judgment dismissing Count I at the pleading stage for failure to state a claim. Ameren's argument that this Court should review the merits of Count I is inconsistent with the scope of this Court's appellate jurisdiction in that it would require this Court, rather than the circuit court, to undertake an original review of the merits of Appellants' claims. Absent a clear legal requirement to deviate from this Court's traditional role as an appellate court, there is no reason to expand this Court's role from that of a court of review to that of a court responsible for making an original, de novo determination on the merits.

The proper standard of review in this case, therefore, is the standard set forth in *Sestric*, which requires the reviewing court to assume as true "all facts well pleaded" and review the pleadings for "the first fatal defect." 159 S.W.2d at 787. This standard is similar to the well-established standard applied to any other judgment of dismissal for failure to state a claim in which the reviewing court tests the adequacy of the petition. *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993). The allegations are assumed to be true, and the reviewing court grants to the plaintiff all reasonable inferences from the alleged facts. The petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. *Id.*

Having established the proper standard of review, this Court must determine whether the circuit court erred in dismissing Count I of Appellant's

10

petition.  This determination requires an analysis of what constitutes a legally sufficient "public hearing" for purposes of section 64.875.

**III. Appellants state a claim that the commission failed to hold a valid hearing**

Appellants argue that the trial court erred by quashing or dismissing their Count I claim that commission's decision to adopt the zoning amendments was illegal due to its failure to conduct valid public hearings as required by section 64.875.  Appellants contend that they properly stated a cause of action because their petition alleges that the commission denied members of the public the opportunity to directly address Ameren's proposal for a new coal-ash landfill, despite the fact that the zoning amendments were designed specifically to authorize that landfill.  In response, Ameren and the commission contend that Appellants' petition admits that they had a full and fair opportunity to be heard and failed to allege what specific arguments and evidence they were prevented from presenting.

Section 64.875 provides, in pertinent part, "no amendments shall be made by the county commission except after recommendation of the county planning commission, or if there be no county planning commission, of the county zoning commission, after *hearings thereon* by the commission."  (Emphasis added). Section 64.875 does not define the term "hearing" or prescribe the requirements for a valid hearing.   Likewise, Missouri courts have yet to define the exact contours of a sufficient hearing pursuant to section 64.875.  In the absence of a statutory definition or established judicial interpretation, analysis of the section

11

64.875 hearing requirement begins with the proposition that "[t]he primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *Gash*, 245 S.W.3d at 232, quoting *State ex rel. Burns v. Whittington*, 219 S.W.3d 224, 225 (Mo. banc 2007). "[T]o discern legislative intent, the Court looks to statutory definitions or, if none are provided, the text's 'plain and ordinary meaning,' which may be derived from a dictionary.

At the outset, it should be noted that, in addition to remaining silent on the issue of what constitutes a "hearing," the statute also does not expressly provide whether a public hearing is required. The fact that the "hearing" is a public hearing is established by the fact that the statute requires public notice of the hearing in the manner prescribed for hearings under section 64.875. It would be nonsensical to require public notice for a non-public hearing. The first prerequisite for a sufficient "hearing" pursuant to section 64.875, then, is that the hearing is public. The hearing in this case was public. The issue raised by Appellants' pleadings is whether the hearing was insufficient because the commission precluded the public from addressing Ameren's proposed coal-ash landfill.

A "hearing" is "a session ... in which testimony is taken from witnesses," an "opportunity to be heard, to present one's side of a case, or to be generally known or appreciated," and "a listening to arguments." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 574 (11th ed. 2012). Given the plain language meaning of the word "hearing," it is apparent that the legislature intended for

12

members of the public to be able "to present [their] side of [the] case," and for the commission to "listen to [the public's] arguments." In sum, the plain language of section 64.875 indicates that speakers must be allowed to address the subject of proposed zoning amendments.

Requiring local zoning authorities to allow the public to address the subject of the proposed zoning amendment is consistent with the purpose of the hearing requirement. The purpose of the hearing requirement is reflected in the requirement that local governments are required to provide notice of a public hearing. For instance, in *State ex rel. Freeze v. City of Cape Girardeau*, the city published notice of proposed zoning changes including a description of properties to be affected. 523 S.W.2d. 123, 124 (Mo. App. 1975). The property description in the notice did not encompass the Freeze property, but the zoning change adopted by the city included the property. *Id*. at 124. The court of appeals held that the inaccurate notice deprived the Freezes of an opportunity for a public hearing and invalidated the zoning amendment as it related to their property. The court reasoned:

> Proper notice and public hearing are vital steps in the municipal legislative process for zoning changes. … This jurisdictional notice is not merely to advise affected parties of changes that will or might occur, but is an indispensable step in the process by which 'parties in interest' may profoundly affect the legislative course of such ordinance. Further, it permits interested citizens an opportunity to furnish the municipality relevant information to prevent improvident changes.

*Id.* at 125.

13

Just as the public is entitled to a reasonable and fair notice of the subject matter of the hearing, it follows that the public hearing should be conducted so that the public can address the subject matter of the proposed zoning amendments. For this reason, the Georgia Supreme Court, in *Yost v. Fulton Cnty.*, 348 S.E.2d 638 (Ga. 1986), invalidated a zoning amendment when opponents had notice of and attended the public hearing but were precluded from voicing their opposition to the amendment. The court reasoned that "notice of a hearing is worthless to the party who, after responding to the notice, is denied the opportunity to speak." *Id.* at 645. Likewise, the Pennsylvania Supreme Court explained, in invaliding a zoning ordinance enacted after defective notice of a public hearing:

> A "hearing" contemplates more than mere *attendance* by the public; it connotes a meeting which the public has the right to attend *and* the right to be *heard*.

*Appeal of Kurren*, 208 A.2d 853, 856 (Pa. 1965).

While the specific procedures for conducting the hearing can be tailored to meet logistical necessities, the requirement of a public hearing pursuant to section 64.875 requires, at a minimum, that the public be given the opportunity to present its views about the subject matter of the proposed zoning amendment. Analyzing Appellants' petition against this standard demonstrates that Appellants stated a valid claim for relief in Count I.

Appellants' petition alleges that the zoning amendments authorize the presence of coal-ash landfills next to and under common ownership with an existing power plant, without mentioning Ameren by name. Second, it alleges that

14

Ameren's Labadie plant is the only power plant in Franklin County and that Ameren publicly proposes to build a new coal-ash landfill on their property adjacent to the plant. Third, the petition alleges that, during the hearings on the zoning amendments, the commission announced that the public could not speak regarding Ameren's landfill proposal and that the limitation on discussion had a "chilling" effect on discussion at the hearing.

Assuming the truth of Appellants' allegations, and construing the petition broadly, Appellants have stated a viable claim that the zoning amendments were enacted without a legally sufficient public hearing. The commission adopted the challenged zoning amendments for the specific purpose of allowing Ameren to locate a new coal-ash landfill on its property adjacent to its Labadie power plant. Nevertheless, according to Appellants' allegations, the commission prevented the public from discussing Ameren's proposed landfill at the hearings. Assuming the truth of these allegations, the manner in which the hearing was conducted arguably denied the citizens of Franklin County a fair "opportunity to be heard, to present [their] side of [the] case, [and] to be generally known or appreciated." MERRIAM-WEBSTER, at 574. The restricted discussion also arguably prevented the citizens of Franklin County from discussing the actual, underlying subject of the amendments. Appellants' petition states a viable claim that the commission did not conduct a legally sufficient hearing as required by section 64.875.

15

## IV. Conclusion

The trial court's judgment of dismissal on Count I is reversed. Until Count I is resolved on its merits by the trial court, a final judgment upholding the commission's decision to adopt the amendments is premature. The judgment upholding the merits of the commission's decision to adopt the landfill zoning amendments is also reversed. The case is remanded to the circuit court.[5]

_____
RICHARD B. TEITELMAN, Judge

All concur.

---

[5] Ameren filed a motion to dismiss the appeal as moot because the Public Service Commission (PSC) issued a certificate of convenience and necessity supplanting Franklin County's landfill zoning regulations. Ameren asserts that the appeal is moot by operation of section 64.890.2(3), which provides that the zoning authority granted to local governments by the state enabling statutes "shall not be construed … to authorize interference with public utility services as may have been or may hereafter be authorized or ordered by the public service commission or by permit of the county commission, as the case may be."

The zoning amendments at issue in this appeal authorize coal-ash landfills. Ameren is defending the legality of these zoning amendments. The zoning amendments do not "authorize interference" with public utility service ordered by the PSC. To the contrary, the zoning amendments are aimed at facilitating Ameren's operations. Ameren has not demonstrated that the zoning amendments constitute the type of "interference" necessary to trigger section 64.890.2(3). Ameren's motion to dismiss the appeal is overruled.